911 F.2d 1564
 CHARLIE FOWLER EVANGELISTIC ASSOCIATION, INC., Charles A.
Fowler, Jr., individually and for the use and
benefit of Church Mutual Insurance
Company, and Faith Suzanne
Fowler, Plaintiffs-Appellants,
v.
CESSNA AIRCRAFT COMPANY, a foreign corporation and Dean
Aircraft Service, Inc., a foreign corporation,
Defendants-Appellees.
 No. 89-3748.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 20, 1990.
 
 C. Douglas Brown, Panama City, Fla., for plaintiffs-appellants.
 Robert P. Gaines, Beggs & Lane, Pensacola, Fla., Eric D. Griffin, J. Arthur Mozley, Atlanta, Ga., for Cessna Aircraft Co.
 James W. Jarvis, Michael C. Siboni, McCormicak & Siboni, Miami, Fla., for Dean Aircraft.
 Appeal from the United States District Court for the Northern District of Florida.
 Before HATCHETT, Circuit Judge, HILL* and FAIRCHILD**, Senior Circuit Judges.
 PER CURIAM:
 
 
 1
 The plaintiffs brought this diversity action against Cessna Aircraft Company and Dean Aircraft Service, Inc. ("Dean, Inc.") in the Northern District of Florida, seeking damages arising from the crash of a private airplane. The District court dismissed the action against Dean Inc., a Mississippi corporation, for lack of personal jurisdiction, and entered final judgment pursuant to Rule 54(b). The parties do not dispute that the terms of Florida's long-arm jurisdiction statute reaches Dean, Inc. The only issue on appeal is whether there are sufficient contacts between Dean, Inc. and the state of Florida to satisfy due process requirements.
 
 
 2
 Plaintiff Charles A. Fowler, Jr. flew the Charlie Fowler Evangelistic Association's Cessna airplane on a business trip to Key Field in Meridian, Mississippi. The plane was refueled for the return trip to Florida by Miller-Willis Aviation, a fixed-base operator at Key Field. The starboard engine of the plane would not start, however, and Miller-Willis referred Mr. Fowler to Dean, Inc., also located at Key Field. The president of Dean, Inc., Leonard L. Dean, Jr., inspected the plane and found a problem with the fuel pressure sensor wire in the right engine. He soldered the wire and the engine started without difficulty. Mr. Fowler paid $22.26 for the service, and he and his passengers boarded the aircraft and took off. The plane landed in Pensacola to refuel and to let off passengers. On instrument approach to the Bay County airport in Panama City, Florida, the starboard engine quit and the plane crashed. The plaintiffs allege that Mr. Dean's repairs to the airplane were performed negligently, and were a cause of the crash.
 
 
 3
 A federal district court sitting in diversity is bound by the same due process limitations on its exercise of jurisdiction over out-of-state defendants as are the local state courts. The defendant must maintain certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 342-43, 85 L.Ed. 278 (1940)). These contacts cannot be accidental or fortuitous; the defendant must "purposely avail[ ] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)) (emphasis added). The defendant needn't be present physically in the forum state, so long as its efforts are "purposely directed" toward the state's residents. Id.
 
 
 4
 Dean, Inc. is a Mississippi corporation with its principal place of business at Key Field. It has no offices, employees or agents in Florida, nor does it conduct any business in that state. Nevertheless, the plaintiffs claim that its connections with Florida make it amenable to suit there.
 
 
 5
 The plaintiffs point to two contacts. First, according to Mr. Fowler's affidavit, which we accept as true, he told Mr. Dean that he was from Florida and that the plane was headed back to that state. Mr. Dean performed the repairs knowing this. The plaintiffs also point out that Dean, Inc. was listed in the 1986-87 edition of The Aviation Telephone Directory for the Southeastern and Gulf States, and has been listed in later editions. This directory covers Mississippi, Florida and seven other area states and is provided as a service to the aviation industry. The white pages list regional firms alphabetically, the blue pages list landing facilities alphabetically by state, and the yellow pages carry listings and advertisements for regional firms alphabetically by service. All related firms are allowed one or more free listings in each section. Some listings in the white and yellow pages are accentuated by bold-faced type, and the yellow pages include larger advertisements, as do the directory's front and back covers. Presumably, the large type and supplemental ads are provided for a fee. Dean, Inc. is listed under its name in the white pages, under "Key Field" in the blue pages, and by name under "Aircraft Maintenance, Service and Repair" in the yellow pages. Miller-Willis has a similar yellow pages listing, and Meridian Aviation, another operator at Key Field, is listed in the yellow pages under "Fixed Base Operations (Full Service)," although the only way these two operators provide repair service is by referring customers to Dean, Inc. All of these listings are in normal type, and neither Dean, Inc., Miller-Willis nor Meridian Aviation have supplemental advertisements in the directory.
 
 
 6
 We agree with the district court that this not enough to show that Dean, Inc. "purposely directed" activities at Florida residents. Dean, Inc.'s presence in The Aviation Telephone Directory was limited to the basic listings provided free of charge; there were no additional advertisements which might be construed as a deliberate attempt to attract business from out of state. This is confirmed by the small percentage of out-of-state business which Dean, Inc. handles: Mr. Dean estimated that 98-99% of the company's business is local. Even if the basic listings are considered "advertisements," they are not enough, without more, to provide contacts which comport with due process. This court has held that an advertisement in a forum state newspaper announcing employment opportunities, and the sending of an agent to the forum state to interview a person who responded to the ad, was not a "purposeful availment of the benefits and protections of [the forum state's] laws," and thus could not support personal jurisdiction over the defendant in a breach of contract action. Johnston v. Frank E. Basil, Inc., 802 F.2d 418, 420 (11th Cir.1986). See also Growden v. Ed Bowlin and Associates, Inc., 733 F.2d 1149, 1151-52 (5th Cir.1984) (defendant's advertisements offering airplane for sale in two national publications was insufficient to sustain personal jurisdiction, where record did not show how widely the publications were circulated, or the amount of business the ads generated); Loumar v. Smith, 698 F.2d 759, 763-64 (5th Cir.1983) (same).
 
 
 7
 Mr. Dean's knowledge that the plane was on its way to Florida does not add that "something more." That the plane was headed to Florida, rather than a destination within Mississippi or to some other state was truly fortuitous. Mr. Fowler was not responding to the directory listing when he procured Dean, Inc.'s services; he used the only repair facility at Key Field after discovering a mechanical problem with the plane. While it is quite foreseeable that Dean, Inc. would service an airplane which will fly into another state, this is not sufficient to show that Dean, Inc.'s connection with the other state was such that it should reasonably anticipate being haled into court there. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295-97, 100 S.Ct. 559, 566-67, 62 L.Ed.2d 490 (1980).
 
 
 8
 The plaintiffs rely heavily on Morris v. SSE, Inc., 843 F.2d 489 (11th Cir.1988). The defendant in Morris, SSE, had manufactured a parachute automatic activation device, sold it to a Michigan dealer, and then repaired the device when it was shipped (along with two others) from an Alabama air sports company, which had somehow come to own the device. After the defendant made the repairs, the device allegedly failed during a parachute jump in Alabama. This court held that "SSE purposefully availed itself of the Alabama market for ... automatic activation devices by placing the devices into the national stream of commerce, advertising in Alabama, and subsequently repairing the particular device ... and returning it into the Alabama market for use there in the hazardous sport of parachuting." Id. at 495.
 
 
 9
 The contacts between Dean, Inc. and Florida are materially different from those between SSE and Alabama. While SSE advertised for business in a national trade journal and such ads were a "major source of business" for the company, id. at 494, Dean, Inc. merely is listed in a regional telephone directory, and receives only a minute part of its business from out of state. See Growden, above; Loumar, above. Further, Dean, Inc. simply repaired an engine part on a single aircraft which was headed out of state; unlike SSE, it did not place a product "into the national stream of commerce." Finally, unlike the parachute activation device, the Cessna aircraft was not removed from Florida in order to be serviced by Dean, Inc.--Mr. Fowler flew it to Mississippi to conduct his own business. It was happenstance that the airplane needed repairs while it was located at Key Field. Dean, Inc. had done nothing to encourage this business to come to it. Unilateral acts by the plaintiff cannot supply the necessary minimum contacts, or show that a defendant has purposefully availed itself of the benefits and protections of the forum state's law. Burger King Corp., 471 U.S. at 474-75 & n. 17, 105 S.Ct. at 2183-84 & n. 17. See Banton Industries, Inc. v. Dimatic Die & Tool Co., 801 F.2d 1283, 1284-85 (11th Cir.) (single sale of goods by Nebraska company to Alabama company was insufficient to support personal jurisdiction in Alabama, when sale was the only contact with Alabama, was unsolicited by Nebraska company, and when delivery was effectuated in Nebraska), reh'g en banc denied, 806 F.2d 1070 (1986).
 
 
 10
 The judgment is AFFIRMED.
 
 
 11
 AFFIRMED.
 
 
 
 *
 See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 **
 Honorable Thomas E. Fairchild, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation