Dexter J. Kamilewicz, Gretchen L. Kamilewicz, and Martha E. Preston petition for a writ of mandamus directing the trial court to dismiss claims against them alleging malicious prosecution, breach of contract, and abuse of process. We grant the writ. *Page 341 
Daniel Edelman and his law firm, Edelman Combs ("Edelman"), filed an action in the Mobile Circuit Court against the law firm of Wildman, Harrold, Allen Dixon ("Wildman"); each of the partners in Wildman, individually; the law firm of Schnader, Harrison, Segal Lewis ("Schnader"); each of the partners in Schnader, individually; the Kamilewiczes; and Preston, seeking damages against all of the defendants for malicious prosecution and abuse of process. The complaint also stated a claim against the Kamilewiczes and Preston for breach of contract; and it stated a claim of tortious interference with a contract against every defendant except the Kamilewiczes and Preston. Edelman's office is in Chicago, Illinois. Wildman has its principal office in Chicago and another office in New York. Schnader has its principal office in Philadelphia, Pennsylvania, and other offices in New York City; Washington, D.C.; Atlanta, Georgia; Cherry Hill, New Jersey; and Harrisburg and Pittsburgh, Pennsylvania. The Kamilewiczes reside in Maine; Preston resides in Wisconsin.
This action arose out of a class action that Wildman and Schnader filed on behalf of the Kamilewiczes, Preston, and others against Edelman and others in a federal district court in Chicago ("the Kamilewicz action"). The Kamilewicz action was based on allegations that Edelman and others had engaged in wrongdoing in obtaining a substantial attorney fee award in a class action styled Hoffman, et al. v. BancBoston MortgageCorp., et al. ("the Hoffman action"), which had been filed in the Mobile Circuit Court. The complaint in the Kamilewicz
action alleged, among other things, that Edelman, who had participated as class counsel in the Hoffman action, had committed a fraud on the trial court in the Hoffman action by failing to apprise the trial court that approval of the settlement in that case would result in an out-of-pocket loss for the plaintiff class (of which the Kamilewiczes and Preston were members.)[1] The federal district court dismissed theKamilewicz action on the ground that it lacked subject matter jurisdiction. Edelman then filed the present action, alleging 1) that the Kamilewicz action had been filed in an improper and malicious attempt to relitigate matters that had been settled in the Hoffman action (the malicious prosecution claim); 2) that improper discovery had been attempted in the Kamilewicz
action, in violation of the Federal Rules of Civil Procedure (the abuse of process claim); 3) that the Kamilewiczes and Preston had, by filing the Kamilewicz action, breached an agreement not to challenge the settlement reached in theHoffman action (the breach of contract claim); and 4) that Wildman and Schnader had improperly induced the Kamilewiczes and Preston to file the Kamilewicz action (the tortious-interference-with-a-contract claim). The Kamilewiczes and Preston moved to dismiss the claims pertaining to them, arguing that the trial court lacked personal jurisdiction over them and, in the alternative, that dismissal was appropriate under Ala. Code 1975, § 6-5-430 (which requires the trial courts of this state to apply the doctrine of forum non conveniens in deciding whether to exercise jurisdiction over a cause of action accruing outside the state). The trial court denied the motion.
The requirements for personal jurisdiction over a nonresident defendant are set out in Rule 4.2(a)(2), Ala.R.Civ.P.:
 "(2) Sufficient Contacts. A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's:
". . . .
 "(I) otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable *Page 342 
to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)-(H) of this subsection (2), so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this state or the Constitution of the United States."
Service of process under Rule 4.2(a)(2) has been held to be as far-reaching as due process permits. However, the constitutional guaranty of due process precludes a court from asserting jurisdiction over a defendant unless the defendant has sufficient contacts with the forum state. Murray v. Alfab,Inc., 601 So.2d 878 (Ala. 1992). In Burger King Corp. v.Rudzewicz, 471 U.S. 462, 471-76, 105 S.Ct. 2174, 2181-84,85 L.Ed.2d 528 (1985), the United States Supreme Court stated:
 "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.' International Shoe Co. v. Washington, [326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95
(1945)]. By requiring that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,' Shaffer v. Heitner, 433 U.S. 186, 218[, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683] (1977) (Stevens, J., concurring in judgment), the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit,' World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297[, 100 S.Ct. 559, 567, 62 L.Ed.2d 490] (1980).
 "Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774[, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790] (1984), and the litigation results from alleged injuries that 'arise out of or relate to' those activities, Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414[, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404] (1984). . . .
". . . .
 ". . . [T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State. International Shoe Co. v. Washington, supra, at 316[, 66 S.Ct., at 158]. Although it has been argued that foreseeability of causing injury in another State should be sufficient to establish such contacts there when policy considerations so require, the Court has consistently held that this kind of foreseeability is not a 'sufficient benchmark' for exercising personal jurisdiction. World-Wide Volkswagen Corp. v. Woodson, 444 U.S., at 295[, 100 S.Ct., at 566]. Instead, 'the foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.' Id., at 297[, 100 S.Ct., at 567]. In defining when it is that a potential defendant should 'reasonably anticipate' out-of-state litigation, the Court frequently has drawn from the reasoning of Hanson v. Denckla, 357 U.S. 235, 253[, 78 S.Ct. 1228, 1239-1240, 2 L.Ed.2d 1283] (1958):
 " 'The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'
 "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' *Page 343 
contacts, Keeton v. Hustler Magazine, Inc., 465 U.S., at 774[, 104 S.Ct., at 1478]; World-Wide Volkswagen Corp. v. Woodson, supra, at 299[, 100 S.Ct., at 568], or of the 'unilateral activity of another party or a third person,' Helicopteros Nacionales de Colombia, S.A. v. Hall, supra, at 417[, 104 S.Ct., at 1873-1874]. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State. McGee v. International Life Insurance Co., [355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)]; see also Kulko v. California Superior Court, [436 U.S. 84, 94, 98 S.Ct. 1690, 1698, 56 L.Ed.2d 132 (1978),] n. 7.* Thus where the defendant 'deliberately' has engaged in significant activities within a State, Keeton v. Hustler Magazine, Inc., supra, at 781[, 104 S.Ct., at 1481-1482], or has created 'continuing obligations' between himself and residents of the forum, Travelers Health Assn. v. Virginia, [339 U.S. 643, 648, 70 S.Ct. 927, 929-930, 94 L.Ed. 1154 (1950)], he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.
(Emphasis in original.)
These due process requirements were recently echoed by this Court in Ex parte United Brotherhood of Carpenters Joiners ofAmerica, AFL-CIO, 688 So.2d 246, 250-52 (Ala. 1997):
 "In International Shoe Co. v. Washington, 326 U.S. 310[, 66 S.Ct. 154, 90 L.Ed. 95] (1945), the United States Supreme Court established the 'minimum contacts' standard, geared toward assessing the inherent fairness of compelling a nonresident defendant to submit to a state's jurisdiction, based upon the nature of the defendant's contacts with the forum state. The Court carefully distinguished the difference between 'specific' personal jurisdiction, which applies when an action arises directly out of forum-based activities, and 'general' personal jurisdiction, which applies when the action is not directly founded on forum-based activity. International Shoe, 326 U.S., at 317[, 66 S.Ct., at 158-159]. While a showing of certain minimum contacts suffices to support a holding of specific jurisdiction, the plaintiff must go further and establish that the defendant's contacts with the forum have been 'continuous and systematic' in order to invoke general jurisdiction. Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437[, 72 S.Ct. 413, 96 L.Ed. 485] (1952); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408[, 104 S.Ct. 1868, 80 L.Ed.2d 404] (1984). . . .
 "The United States Supreme Court has given some guidance in determining what level of contact is systematic and continuous enough to justify the imposition of a state's general jurisdiction over a foreign defendant. For example, in Perkins v. Benguet Consolidated Mining Co., supra,, an Ohio state court sought to exercise general jurisdiction over a mining company whose properties were in the Philippine Islands, but whose operations there were completely halted during the Japanese occupation of the islands during World War II. During that interim, the president of the company, who was also its general manager and principal stockholder, returned to his home in Ohio and there maintained an office, where he kept business files, carried on business correspondence, drew and distributed salary checks to employees, and generally conducted most of the day-to-day operations of his *Page 344 
company. He also maintained two active Ohio bank accounts with substantial balances, used a local bank as a transfer agent for the stock of the company, held directors' meetings in his home, dispatched funds to cover the costs of buying new machinery for the Philippines operations, and supervised the overall post-war rehabilitation of his business. The Supreme Court found that these activities constituted a continuous and systematic supervision of the necessarily limited wartime activities of the company, and were sufficient to subject the mining operation to the general jurisdiction of the Ohio court.
 "In Helicopteros Nacionales, supra, the Supreme Court held that the nature and quantity of a Colombian corporation's contacts with Texas were not sufficient to subject it to the general jurisdiction of that state's courts in a wrongful death case brought by a Texas resident. The Court noted that the defendant corporation had no place of business in Texas and was not licensed to conduct business there, then went on to examine the substance of the defendant's limited contacts with Texas. These contacts consisted of the defendant's sending its chief executive officer to Houston to negotiate a major transportation-services contract with a Texas company; receiving $5 million in payment on the contract by means of a check drawn on a Houston bank; purchasing 80% of its helicopter fleet, along with other equipment and training services, from a Texas corporation; and sending personnel to the Texas corporation's facilities for training. Helicopteros Nacionales, 466 U.S. at 417[, 104 S.Ct., at 1873-1874]. These contacts, while significant, represented an isolated period of contact that was tied to one business transaction, albeit a large one; thus, this contact was not sufficiently continuous and systematic to support a finding of general jurisdiction over the defendant. Helicopteros Nacionales, 466 U.S. at 416[, 104 S.Ct., at 1872-1873].
 "Few Alabama cases have specifically addressed the issue of what contacts will subject a defendant to the general jurisdiction of this state's courts, and those that have done so have focused on the activities of corporations seeking to avail themselves of profit in this state. In Ex parte Newco Mfg. Co., 481 So.2d 867 (Ala. 1985), the widow of a repairman who died when he was struck by a falling machine filed a products liability action against the foreign manufacturer of a small part that had been incorporated into the machine. This Court noted that the foreign manufacturer systematically marketed its goods to residents of this state, either through an independent manufacturer representative or by telephone and mail contact. Although these sales amounted to only $65,000 to $85,000 over a five-year period, this Court found that it was a continuous and deliberate course of merchandising on the part of the foreign manufacturer, which sought to benefit from those activities in Alabama, and that such contact invoked the general jurisdiction of this state's courts. Likewise, in Atlanta Auto Auction, Inc. v. G G Auto Sales, Inc., 512 So.2d 1334 (Ala. 1987), this Court determined that a Delaware automobile auction company, which was not licensed to do business in Alabama, nevertheless purposefully targeted Alabama residents through a continuous and systematic course of mail services, and it held that this was sufficient contact to invoke personal jurisdiction over the company. Because the nonresident defendants in Newco and Atlanta Auto Auction
initiated contacts with the state solely for their own profit, availing themselves of the privileges of conducting business here, this Court determined that such activities were sufficiently systematic and continuous to support a finding of general jurisdiction, and determined that it was fair and reasonable under the Due Process Clause to invoke such jurisdiction."
After examining the record and the briefs, we conclude that the trial court lacks personal jurisdiction over the Kamilewiczes and Preston. It is significant, we think, that neither the malicious prosecution claim nor the breach of contract claim directly arises out of or relates to forum-based activities, i.e., they are not based on or related to activities that occurred in Alabama. The underlying basis for both the malicious prosecution *Page 345 
claim and the breach of contract claim was the filing of theKamilewicz action in Chicago. Any injuries suffered by Edelman as the result of those two claims arose out of its being named as a defendant in the Chicago litigation; Edelman suffered no injury as the result of the participation by the Kamilewiczes and Preston as class members in the Hoffman action. A contrary conclusion would, of course, be absurd, given the fact that Edelman represented the class in the Hoffman action. Thus, the requirements for establishing general jurisdiction must be met with respect to those two claims. As previously noted, while a showing of certain minimum contacts may suffice to support a holding of specific jurisdiction, the plaintiff must go further and establish that the defendant's contacts with the forum have been "continuous and systematic" in order to invoke general jurisdiction. The record indicates that the only contact the Kamilewiczes and Preston have ever had with this state were the result of their inclusion as unnamed members of the plaintiff class in the Hoffman action and by virtue of their status as plaintiffs in the Kamilewicz action, in which summonses and complaints were served in Alabama on three Alabama attorneys and their respective law firms (none of whom are parties in this action) and a subpoena was served in Alabama on an expert witness (a Mobile accountant) who had been used by Edelman in the Hoffman action. These isolated brushes with Alabama's judicial system fall far below the threshold of "continuous and systematic" forum activity necessary to support the exercise of general jurisdiction. See, e.g., Helicopteros Nacionales deColombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868,80 L.Ed.2d 404 (1984).[2] *Page 346 
With respect to the abuse of process claim, Edelman alleged:
 "Under the Federal Rules of Civil Procedure applicable to [the Kamilewicz action], it was improper for defendants to initiate discovery in that action until a discovery planning conference had been held. Fed.R.Civ.P. 26(a), (f).
 "On November 9, 1995, without making the slightest effort to comply with Fed.R.Civ.P. 26(a) and (f), prior to the appearance of any defendant, and prior to the receipt of the summons and complaint by some of the persons named therein, defendants purported to issue a third-party subpoena to one of the expert witnesses that Edelman Combs had retained to provide expert advice and testimony in the Hoffman case and certain other financial institution cases, Dr. Albert Madansky of the University of Chicago Graduate School of Business.
 "The purpose of this improper conduct by defendants was to harass Dr. Madansky, punish him for [serving] in the past as an expert witness in cases brought against financial institutions by Edelman Combs, and deter him from serving in the future as an expert witness in cases brought against financial institutions by Edelman Combs. Among others, Dr. Madansky was a witness in the overescrowing case against LaSalle Talman Mortgage Corporation. . . .
 "Defendants also had a third-party subpoena served on a Mobile, Alabama, accountant used by Edelman Combs . . . as an expert witness."
We note that the abuse of process claim is also based, at least in part, on activity that took place in Chicago — the service of a subpoena on Dr. Madansky for the alleged purpose of "harassing" and "punishing" him. As was the case with respect to the malicious prosecution and breach of contract claims, the requirements for establishing general jurisdiction over this aspect of the abuse of process claim have not been met. The sole remaining question, therefore, is whether there is any basis for the trial court to exercise specific personal jurisdiction over the only aspect of the abuse of process claim that arguably does arise out of or relate to an occurrence in this state — the service of a subpoena on the Mobile accountant.[3]
As previously noted, the only contact the Kamilewiczes and Preston have ever had with Alabama was the result of their inclusion as unnamed members of the plaintiff class in theHoffman action, and by virtue of their status as plaintiffs in the Kamilewicz action, where they, through their attorneys, served summonses and complaints in Alabama on three Alabama attorneys and their respective law firms and served the subpoena in Alabama on the Mobile accountant. As the United States Supreme Court noted in Burger King Corp. v. Rudzewicz, supra, "the constitutional touchstone remains whether *Page 347 
the defendant purposefully established '[sufficient] contacts' in the forum state," so that it is foreseeable that that defendant could reasonably anticipate being haled into court there, 471 U.S. at 474, 105 S.Ct. at 2183. "This 'purposeful availment' requirement," according to the Court, "ensures that a defendant will not be [sued in] a jurisdiction solely as a result of [the defendant's] 'random,' 'fortuitous,' or 'attenuated' contacts" with that jurisdiction, 471 U.S. at 475,105 S.Ct. at 2183-84. The issue, then, is whether the Kamilewiczes and Preston could have reasonably foreseen that they could be sued in Alabama, by a law firm that they had sued in Illinois, for an injury that allegedly occurred in Illinois. In this regard, there is little doubt that the Kamilewiczes and Preston's contact with Alabama as class members in theHoffman action was the result of a unilateral decision on the part of Edelman and others to file the Hoffman action in Alabama. As previously noted, unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state. It is essential that there be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state. From the Kamilewiczes and Preston's perspective, their involvement in an Alabama class action was entirely fortuitous. The class would have been the same no matter which of the 50 states the Hoffman action had been filed in. Likewise, the service in Alabama of the summonses and complaints on the Alabama attorneys and their respective law firms and the service of the subpoena on the Mobile accountant in the Kamilewicz action were fortuitous, in the sense that those individuals and firms just happened to be located in Alabama, and created only an attenuated affiliation with this state. We conclude, therefore, that neither the Kamilewiczes and Preston's inclusion in the class in theHoffman action nor their serving process in Alabama in theKamilewicz action was a sufficient contact with Alabama to put them on notice that they could be sued here for the injuries that Edelman alleged occurred in Illinois.
Having determined that the trial court lacks personal jurisdiction over the Kamilewiczes and Preston, we pretermit any discussion as to whether the claims should be dismissed under the doctrine of forum non conveniens.
WRIT GRANTED.
HOOPER, C.J., and MADDOX, SHORES, KENNEDY, COOK, and SEE, JJ., concur.
[1] In the Hoffman action, the central issue was whether BancBoston had overcharged mortgagors whose mortgages it serviced, so that a surplus existed in each mortgagor's escrow account. The Kamilewiczes and Preston had mortgages serviced by BancBoston. The record indicates that the settlement in theHoffman action resulted in BancBoston's changing its procedure for managing its escrow accounts and in de minimis interest payments (not to exceed $8.76) being made to the individual members of the plaintiff class. However, the settlement also resulted in a net loss to at least some of the members of the class. Pursuant to the settlement, the Kamilewiczes' escrow account was charged $91.33 and Preston's escrow account was charged $80.94 in order to pay the attorneys, including Edelman, who had represented the class.
* "So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction. McGee v.International Life Insurance Co., 355 U.S., at 223[,78 S.Ct., at 201]. The Court has noted, however, that 'some single or occasional acts' related to the forum may not be sufficient to establish jurisdiction if 'their nature and quality and the circumstances of their commission' create only an 'attenuated' affiliation with the forum. International Shoe Co. v.Washington, 326 U.S. 310, 318[, 66 S.Ct. 154, 159, 90 L.Ed. 95] (1945); World-Wide Volkswagen Corp. v. Woodson, 444 U.S., at 299[, 100 S.Ct., at 568]. This distinction derives from the belief that, with respect to this category of 'isolated' acts,id., at 297[, 100 S.Ct., at 567], the reasonable foreseeability of litigation in the forum is substantially diminished."
[2] In Helicopteros, 466 U.S. at 415-16, n. 10, 104 S.Ct. at 1872, n. 10, the United States Supreme Court stated:
 "Because the parties have not argued any relationship between the cause of action and Helicol's contacts with the State of Texas, we, contrary to the dissent's implication, post, at 419-420, assert no 'view' with respect to that issue.
 "The dissent suggests that we have erred in drawing no distinction between controversies that 'relate to' a defendant's contacts with a forum and those that 'arise out of' such contacts. Post, at 420. This criticism is somewhat puzzling, for the dissent goes on to urge that, for purposes of determining the constitutional validity of an assertion of specific jurisdiction, there really should be no distinction between the two. Post, at 427-428.
 "We do not address the validity or consequences of such a distinction because the issue has not been presented in this case. Respondents have made no argument that their cause of action either arose out of or is related to Helicol's contacts with the State of Texas. Absent any briefing on the issue, we decline to reach the questions (1) whether the terms 'arising out of' and 'related to' describe different connections between a cause of action and a defendant's contacts with a forum, and (2) what sort of tie between a cause of action and a defendant's contacts with a forum is necessary to a determination that either connection exists. Nor do we reach the question whether, if the two types of relationship differ, a forum's exercise of personal jurisdiction in a situation where the cause of action 'relates to,' but does not 'arise out of,' the defendant's contacts with the forum should be analyzed as an assertion of specific jurisdiction."
Our research has not revealed another case in which the Supreme Court or a federal circuit court of appeals has clarified whether there is a distinction to be made between the terms "arises out of" and "related to" for purposes of determining whether a sufficient connection exists between a cause of action and a defendant's contacts with a forum. We note that Justice Brennan in his dissent inHelicopteros took the view that a distinction should be made and that the Due Process Clause required "significant contacts directly related to the underlying cause of action."466 U.S. at 427-28, 104 S.Ct. at 1879. For purposes of this opinion, we assume that the term "related to" has a meaning separate and apart from the term "arises out of." Black's Law Dictionary 108 (6th ed. 1990), defines "arise" in pertinent part as follows: "To spring up, originate, to come into being or notice; to become operative, sensible, visible, or audible; to present itself." Black's, at p. 1288, defines "relate" as follows: "To stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with; with 'to.' " We also assume, however, that the Due Process Clause does not permit an unduly broad interpretation of the term "related to," but, instead, that it requires a significant or direct relationship between the underlying cause of action and the defendant's contacts with the forum in order to bypass the more stringent requirements that are necessary to invoke general personal jurisdiction, i.e., a showing of continuous and systematic contacts by the defendant with the forum. Although the malicious prosecution claim and the breach of contract claim may be indirectly linked to the Hoffman action (in the sense that the Hoffman action gave rise to theKamilewicz action, which, in turn, gave rise to the present action), we do not believe that these two claims are sufficiently "related to" the Hoffman action to obviate the need on Edelman's part to demonstrate continuous and systematic contacts by the Kamilewiczes and Preston with Alabama. In any event, we note that even if the malicious prosecution claim and the breach of contract claim were sufficiently "related to" theHoffman action to invoke a specific personal jurisdiction analysis, the result would be the same because, as we point out later in this opinion, the Kamilewiczes and Preston's contacts with Alabama are not sufficient to give the trial court specific personal jurisdiction.
[3] Edelman contends that he and his firm were injured because, they say, the accountant was served with a subpoena "[b]efore the time for commencing discovery prescribed by the Federal Rules of Civil Procedure." Edelman argues that the "subpoena was issued in Mobile County, Alabama, to procure records and a witness pertaining to this case" and that this constituted an abuse of process because the subpoena "was not for purposes of discovery, as no discovery was permitted yet." The abuse of process claim is apparently based on allegations that the Mobile accountant was served with a subpoena before a discovery-planning conference had been held, as provided in Rule 26(f), Fed.R.Civ.P. The essential elements of abuse of process are: 1) an ulterior purpose and 2) a willful act in the use of the process not proper in the regular conduct of the proceeding. Reynolds v. McEwen, 416 So.2d 702 (Ala. 1982). Although we express no opinion with respect to the merits of this claim, we do question how the possibly premature service of a subpoena on the accountant could rise to the level of an abuse of process or how the service of the subpoena could have injured Edelman so as to establish the necessary standing to pursue an abuse of process claim against the Kamilewiczes and Preston.