896 So.2d 513 (2004)
Robert NOVAK
v.
John BENN.
2020466, 2020848.
Court of Civil Appeals of Alabama.
April 2, 2004.
Rehearing Applications Denied July 9, 2004.
Certiorari Denied September 17, 2004
*514 Robert Novak, pro se.
John R. Benn, pro se.
Alabama Supreme Court 1031617.
PITTMAN, Judge.
Robert Novak, the defendant in a defamation action brought by John Benn in the Colbert Circuit Court, appeals from a default judgment awarding Benn $50,000 and from a postjudgment order permitting execution upon an Internet domain name ("petswarehouse.com") and a federally registered trademark ("Pets Warehouse") held by Novak. Because we conclude that the trial court lacked personal jurisdiction over Novak, we reverse both the judgment and the postjudgment execution order.
Benn filed his action in April 2002, naming Novak, Jack Nolan, and various fictitiously named parties (see Rule 9(h), Ala. R. Civ. P.) as defendants and seeking, among other relief, $70,000 in damages. In pertinent part, Benn's complaint alleged that on or about November 28, 2001, a person using the "screen name" (i.e., Internet pseudonym) of "Jackpetsw" posted a message in an electronic forum hosted by the Internet service provider CompuServe for persons interested in the keeping of pet fish. In CompuServe's "Aquaria/Fish Forum," that person wrote about Benn: "No lawyer worth his salt would do what you are doing, which is why a complaint is pending with your state bar"; at that time, no such complaint was pending against Benn. Benn alleged that the statement was false, that it was made maliciously and intentionally, that the statement was defamatory per se, and that the person uttering the statement was acting on behalf of Novak in an employment or agency relationship.
In response to Benn's complaint, Novak removed the case to federal district court and filed an answer that, among other things, alleged the absence of personal jurisdiction as to him and a counterclaim that alleged that Benn's action was frivolous and had been brought to harass and intimidate Novak. The federal district court remanded the case to the trial court because the amount in controversy was less than $75,000 (see 28 U.S.C. § 1332). After the case was remanded, Benn moved to dismiss the counterclaim, moved to strike certain paragraphs of Novak's answer, and amended his complaint to drop Jack Nolan as a defendant.
*515 Although Benn propounded interrogatories, requests for admissions, and requests for production to Novak in June 2002, Novak failed to fully respond to those interrogatories and requests, and Benn filed motions pursuant to Rule 37, Ala. R. Civ. P., to compel Novak to respond. An order compelling Novak to respond was entered in October 2002; however, Novak indicated that he would not further respond to the discovery requests. Benn then filed another motion to compel, which the trial court granted.
On November 14, 2002, Benn filed a motion for sanctions against Novak based upon Novak's failure or refusal to fully respond to Benn's discovery requests. In that motion, Benn asked the trial court to render what he termed "an appropriate sanction" under Rule 37(b), Ala. R. Civ. P., such as an order finding "that [Benn] has adequately established personal jurisdiction over Defendant Novak and/or other sanction[s], including entry of default." Five days later, at a docket hearing, Benn withdrew his motion to strike portions of Novak's answer, after which the trial court entered an order dismissing Novak's counterclaim and setting various discovery motions for a hearing on January 14, 2003. Several days before that hearing, Benn filed a fourth motion to compel, which sought an order requiring Novak to respond to a third set of interrogatories; the trial court granted that motion.
After its January 14, 2003, hearing, the trial court entered a judgment granting Benn's motion for sanctions. As a sanction for Novak's conduct in failing to comply with its previous discovery orders, the trial court entered a default judgment in favor of Benn and set a hearing for February 6, 2003, to ascertain Benn's damages; the trial court did not otherwise sanction Novak. Benn filed a second motion for sanctions on January 22, 2003, directed to Novak's failure to respond to the trial court's order granting Benn's fourth motion to compel; that motion was also set for a hearing on February 6, 2003. On February 11, 2003, the trial court entered a "second order granting Rule 37(b) sanctions" in which that court confirmed its previous entry of a default judgment and entered a final judgment awarding Benn $50,000 based upon his testimony at the February 6, 2003, hearing. Novak appealed from the trial court's final judgment on February 26, 2003; this court designated that appeal as case number 2020466.
On March 18, 2003, Benn filed a "Motion for Issuance of Special Writ of Execution" in which he asserted that Novak had not posted a supersedeas bond as to the February 11, 2003, final judgment; that Novak's property interests in the Internet domain name "petswarehouse.com" and the federally registered trademark "Pets Warehouse" were subject to execution under § 6-9-40, Ala.Code 1975; and that the trial court should direct the Internet domain-name registry "Bulkregister, LLC" and the United States Patent and Trademark Office to turn over Novak's interests in the domain name and the trademark to the sheriff of Colbert County. Novak objected, arguing that the domain name and trademark were intangible property located outside of Alabama and were not amenable to execution by the trial court. After a hearing, the trial court issued a "special writ of execution" on May 1, 2003, in which it noted that the registration of the domain name "petswarehouse.com" had been transferred to a Canadian company (Tucows, Inc.) and in which it directed Tucows, Inc., and the United States Patent and Trademark Office to surrender custody and control of, respectively, the Internet domain name "petswarehouse.com" and the trademark "Pets Warehouse" to the sheriff of Colbert County for levy and sale. Novak filed a separate notice of appeal from the trial *516 court's May 1, 2003, order; that appeal was docketed in this court under case number 2020848. Both of Novak's appeals have been consolidated for briefing and decision.
On appeal, both parties have elected to represent themselves, as they did in the trial court. Novak's brief asserts that the trial court never acquired personal jurisdiction over him because, he alleges, he did not have sufficient contact with Alabama for the trial court to properly enter a judgment against him consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution; he also contends that he did not defame Benn and, therefore, the trial court's default judgment was erroneous and that the trial court erred in issuing a writ of execution as to his interests in the Internet domain name and the trademark. Benn contends that the trial court's default judgment was valid and correct and that the trial court's writ of execution was proper.
It is a well-settled principle of law that for a trial court to render a valid judgment, it must have jurisdiction to do so. "`The question of jurisdiction is always fundamental, and if there is an absence of jurisdiction over either the person, or the subject matter, a court has no power to act.'" Mobile & Gulf R.R. v. Crocker, 455 So.2d 829, 831 (Ala.1984) (quoting Norton v. Liddell, 280 Ala. 353, 356, 194 So.2d 514, 517 (1967)). Here, the trial court, an Alabama trial court of general jurisdiction (see generally § 12-11-30, Ala.Code 1975), had subject-matter jurisdiction to hear Benn's action, and Novak raised no specific objection to the trial court's subject-matter jurisdiction in his answer. However, the issue of personal jurisdiction over Novak (the absence of which Novak did specifically plead) is not so simply addressed.
Our Supreme Court has noted that "Rule 4.2, Ala. R. Civ. P., extends the personal jurisdiction of Alabama courts to the limits of due process under the federal and state constitutions." Elliott v. Van Kleef, 830 So.2d 726, 729 (Ala.2002). Because "the due process guaranteed under the Alabama Constitution [is] coextensive with the due process guaranteed under the United States Constitution," 830 So.2d at 730, Alabama courts look to decisions interpreting the breadth of the Due Process Clause of the Fourteenth Amendment to the United States Constitution in determining whether Alabama courts may properly exercise jurisdiction over defendants, such as Novak, who are not physically present in Alabama. Elliott aptly summarizes the pertinent legal principles:
"The Due Process Clause of the Fourteenth Amendment permits a forum state to subject a nonresident defendant to its courts only when that defendant has sufficient `minimum contacts' with the forum state. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The critical question with regard to the nonresident defendant's contacts is whether the contacts are such that the nonresident defendant' "should reasonably anticipate being haled into court"' in the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The sufficiency of a party's contacts are assessed as follows:
"`Two types of contacts can form a basis for personal jurisdiction: general contacts and specific contacts. General contacts, which give rise to general personal jurisdiction, consist of the defendant's contacts with the forum state that are unrelated to the cause of action and that are both "continuous *517 and systematic." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 9, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); [citations omitted]. Specific contacts, which give rise to specific jurisdiction, consist of the defendant's contacts with the forum state that are related to the cause of action. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Although the related contacts need not be continuous and systematic, they must rise to such a level as to cause the defendant to anticipate being haled into court in the forum state. Id.'
"Ex parte Phase III Constr., Inc., 723 So.2d 1263, 1266 (Ala.1998) (Lyons, J., concurring in the result). Furthermore, this Court has held that, for specific in personam jurisdiction, there must exist `a clear, firm nexus between the acts of the defendant and the consequences complained of.' Duke v. Young, 496 So.2d 37, 39 (Ala.1986). See also Ex parte Kamilewicz, 700 So.2d 340, 345 n. 2 (Ala.1997).
"In the case of either general in personam jurisdiction or specific in personam jurisdiction, `[t]he "substantial connection" between the defendant and the forum state necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State.' Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). This purposeful-availment requirement assures that a defendant will not be haled into a jurisdiction as a result of '"the unilateral activity of another person or a third person."' Burger King, 471 U.S. at 475, 105 S.Ct. 2174, quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).
"Only after such minimum contacts have been established does a court then consider those contacts in the light of other factors  such as the burden on the defendant of litigating in the forum state and the forum state's interest in adjudicating the dispute, Burger King, 471 U.S. at 476-77, 105 S.Ct. 2174  to determine whether the exercise of personal jurisdiction over the nonresident defendant comports with' "traditional notions of fair play and substantial justice."' Brooks v. Inlow, 453 So.2d 349, 351 (Ala.1984), quoting International Shoe, 326 U.S. at 316, 66 S.Ct. 154. See also Burger King, 471 U.S. at 476-77, 105 S.Ct. 2174."
830 So.2d at 730-31.
Does the record support the proposition that the trial court properly exercised personal jurisdiction over Novak? Stated another way, were Novak's specific or general contacts with Alabama sufficient under due-process jurisprudence to warrant the trial court's exercise of jurisdiction? We must answer those queries in the negative. First, the record does not contain any evidence that Novak purposefully directed any conduct toward Alabama "continuous[ly] and systematic[ally]" such that he could be said to have subjected himself to general in personam jurisdiction in Alabama. Second, Novak's conduct "related to the cause of action" (in this case, Benn's defamation claim arising from a statement allegedly made by Novak in an Internet forum) does not evidence "an action of the defendant purposefully directed toward" Alabama; rather, the statement of which Benn complains was made in a forum accessible by practically every person whose computer has access to the Internet, not just Alabama residents.
We note that the Minnesota Supreme Court recently considered the application *518 of the Due Process Clause in a factual situation closely paralleling that presented in this case. In Griffis v. Luban, 646 N.W.2d 527 (Minn.2002), Marianne Luban, a Minnesota resident who maintained "a nonprofessional interest in the history and culture of ancient Egypt," 646 N.W.2d at 530, posted messages to sci.archaeology, a public Internet newsgroup that is accessible by any person with Internet access, that challenged the credentials and expertise of Katharine Griffis, an Alabama resident who had previously taught college classes on the history and culture of ancient Egypt. 646 N.W.2d at 531. Griffis then brought a defamation action against Luban in the Circuit Court of Jefferson County, Alabama; because Luban did not respond to that action, the Jefferson Circuit Court entered a default judgment in favor of Griffis and awarded damages and injunctive relief. Id. When Griffis filed that default judgment in a Minnesota court for enforcement purposes, Luban moved to vacate that judgment on the basis that the Alabama court had lacked personal jurisdiction over her. The Minnesota trial court concluded that the Alabama court had had jurisdiction, and an intermediate appellate court affirmed that decision, "conclud[ing] that Luban was subject to the Alabama court's jurisdiction because she made potentially defamatory statements that were being read in Alabama and had knowledge of the effect of those statements in Alabama." 646 N.W.2d at 531 (citing Griffis v. Luban, 633 N.W.2d 548, 553 (Minn.Ct.App.2001)).
The Minnesota Supreme Court reversed the judgments of the lower courts. In doing so, that court first noted that the Alabama court's "general" personal jurisdiction over Luban was not an issue in that case. 646 N.W.2d at 532. The Minnesota Supreme Court then stated that as to "specific" personal jurisdiction, "[f]or the minimum contacts requirement to be satisfied, the defendant must have `purposefully avail[ed]' [himself or] herself of the privilege of conducting activities within the jurisdiction." Id. (quoting Imo Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir.1998), quoting in turn Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). After discussing the holding of Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), a leading case concerning the constitutional propriety of basing personal jurisdiction upon the effects within a forum of tortious conduct outside a forum, the Minnesota Supreme Court agreed with the Third Circuit's analysis of Calder as set forth in Imo Industries, 155 F.3d at 265-66:
"The [Calder `effects'] test requires the plaintiff to show that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm caused by that tort in the forum such that the forum state was the focal point of the plaintiff's injury; and (3) the defendant expressly aimed the tortious conduct at the forum such that the forum state was the focal point of the tortious activity. [Imo Industries, 155 F.3d at] 265-66. Significantly, the [Imo Industries] court emphasized that to satisfy the third prong, the plaintiff must show that `the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum.' Id. at 266 (emphasis added [in Griffis])."
646 N.W.2d at 534.
The Minnesota Supreme Court concluded that under the facts presented, Griffis had not met the requirements of the third prong of the Calder"effects" test:
"While the record supports the conclusion that Luban's statements were intentionally directed at Griffis, whom *519 she knew to be an Alabama resident, we conclude that the evidence does not demonstrate that Luban's statements were `expressly aimed' at the state of Alabama. The parties agree that Luban published the allegedly defamatory statements on an internet newsgroup accessible to the public, but nothing in the record indicates that the statements were targeted at the state of Alabama or at an Alabama audience beyond Griffis herself. The newsgroup on which Luban posted her statements was organized around the subjects of archeology and Egyptology, not Alabama or the University of Alabama academic community. According to Griffis, Luban's messages were widely read by her colleagues  the other amateur Egyptologists who participated in the sci.archaeology newsgroup. But Griffis has not presented evidence that any other person in Alabama read the statements. Nor has she asserted that Alabama has a unique relationship with the field of Egyptology, like the close relationship between the plaintiff's profession and the forum state that the Supreme Court found relevant in Calder. Therefore, even if we assume Luban's statements were widely read by followers of the sci.archaeology newsgroup, the readers most likely would be spread all around the country  maybe even around the world  and not necessarily in the Alabama forum. The fact that messages posted to the newsgroup could have been read in Alabama, just as they could have been read anywhere in the world, cannot suffice to establish Alabama as the focal point of the defendant's conduct.
"....
"... [W]e conclude that the record does not demonstrate that Luban expressly aimed her allegedly tortious conduct at the Alabama forum so as to satisfy the third prong of the Imo Industries analysis. The mere fact that Luban knew that Griffis resided and worked in Alabama is not sufficient to extend personal jurisdiction over Luban in Alabama, because that knowledge does not demonstrate targeting of Alabama as the focal point of the allegedly defamatory statements. As a result, even if Luban knew or should have known that defamatory statements about Griffis would affect her in her home state of Alabama, that alone is not enough to demonstrate that Alabama was the focal point of Luban's tortious conduct. Failing this, Griffis cannot rely on Calder to confer personal jurisdiction based on Luban's allegedly intentional tortious conduct. Because Griffis does not claim any other basis on which the Alabama court could properly extend personal jurisdiction over Luban, the judgment of the Alabama court is not entitled to full faith and credit in Minnesota."
646 N.W.2d at 535-37 (footnote omitted).
The Alabama Supreme Court reached a similar conclusion on somewhat different facts in Elliott v. Van Kleef, supra. In Elliott, the plaintiff, an Alabama resident, claimed in an action brought in an Alabama circuit court that a law firm based in Arkansas (Bullock & Van Kleef) and one of its lawyers had committed legal malpractice while serving as local counsel in a personal-injury action brought in an Arkansas state court on behalf of the plaintiff. The Alabama Supreme Court affirmed a judgment dismissing the claims against the law firm and the lawyer because of a lack of personal jurisdiction over them. In so doing, the Alabama Supreme Court expressly rejected the plaintiff's contention that the law firm's advertisement in a directory of lawyers that is distributed nationally, the Martindale-Hubbell Law Directory, amounted to sufficient minimum contacts with Alabama so *520 as to confer personal jurisdiction in Alabama courts:
"Nor can Bullock & Van Kleef's listing in the Martindale-Hubbell Law Directory extend Alabama's in personam jurisdiction over the Van Kleef defendants because this listing is not purposefully directed at Alabama.... The Martindale-Hubbell directory is distributed nationally; a subscriber cannot be said to have purposefully directed his listing specifically at one state. If a law firm's decision to list its services in this directory was sufficient to create in personam jurisdiction, then every attorney listed in this directory would be subject to nationwide service of process."
830 So.2d at 731-32. In so holding, the Alabama Supreme Court cited with approval three federal cases that had concluded that the mere placement of advertisements in publications distributed to particular forum states did not represent purposeful contact with those states: Charlie Fowler Evangelistic Ass'n, Inc. v. Cessna Aircraft Co., 911 F.2d 1564, 1566 (11th Cir.1990); Johnston v. Frank E. Basil, Inc., 802 F.2d 418, 420 (11th Cir.1986); and Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop., 17 F.3d 1302, 1305 (10th Cir.1994).
Here, the record supports only the proposition that Novak allegedly posted defamatory statements on Compuserve's "Aquaria/Fish Forum"  a forum that is accessible to anyone, whether located in Alabama or not, who has a computer and an Internet connection. Although it can be inferred that Novak knew of Benn's status as an Alabama resident, it cannot reasonably be said that Novak expressly aimed his allegedly tortious conduct at Alabama any more than Marianne Luban or Bullock & Van Kleef did.
Benn attempts to defend the trial court's assumption of personal jurisdiction over Novak by citing Novak's resistance to Benn's discovery requests and his assertion of a counterclaim as grounds for deeming that Novak "waived" the personal-jurisdiction defense Novak pleaded in his answer. These arguments lack merit. Although a trial court may, in certain limited circumstances, properly deem personal jurisdiction over a particular party established as a sanction for that party's defiance of orders compelling responses to discovery requests that are directed to the issue of personal jurisdiction, see Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 695, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), the trial court in this case entered no such sanction despite Benn's express request that it do so. Similarly, the bulk of recent caselaw construing Rule 12(b), Fed.R.Civ.P., which (like Rule 12(b), Ala. R. Civ. P.) allows certain defenses, such as lack of personal jurisdiction, to be raised either in a pre-answer motion to dismiss or in an answer, holds that "no Rule 12(b) defense is waived by the assertion of a counterclaim." 5A Charles A. Wright and Arthur R. Miller, Federal Practice & Procedure § 1397 (Rev.2d ed.1990); see also Bayou Steel Corp. v. M/V Amstelvoorn, 809 F.2d 1147, 1149 (5th Cir.1987); O'Donohue v. Citizens Bank, 350 So.2d 1049, 1054-55 (Ala.Civ.App.1977) (malicious-prosecution counterclaim that was logically related to implied-contract claims did not waive personal-jurisdiction defense). The cases relied upon by Benn  i.e., Martin v. Drummond Co., 663 So.2d 937 (Ala.1995), which held that plaintiffs who filed proofs of claim in a Delaware class action had purposely availed themselves of Delaware law, and Holway v. Wanschek, 690 So.2d 429 (Ala.Civ.App.1997), which held that proponents of a will who filed for probate of a will in an Alabama probate court were subject to personal jurisdiction in Alabama in a contest of that will  are inapposite and do not compel a conclusion that Novak's *521 counterclaim somehow amounted to a waiver of his personal-jurisdiction defense.
Benn also cites two other actions by Novak that, Benn contends, warrant a conclusion that the trial court properly exercised personal jurisdiction over Novak: (1) Novak's filing of a complaint against Benn with the Alabama State Bar after Benn had filed his defamation action; and (2) Novak's filing of a motion, after the trial court had issued its writ of execution, requesting that he be afforded various personal-property exemptions recognized by Alabama statutes and rules. However, it is well settled that those postfiling actions are immaterial to the issue of the trial court's personal jurisdiction to enter a judgment in favor of Benn on his defamation claim against Novak. As the Alabama Supreme Court noted in Elliott," `[o]nly contacts occurring prior to the event causing the litigation may be considered'" in determining whether a trial court may exercise personal jurisdiction over a party consistent with the Due Process Clause. 830 So.2d at 731 (quoting Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co., 907 F.2d 911, 913 (9th Cir.1990)).
Based upon the foregoing facts and authorities, we conclude that the trial court's judgment in favor of Benn and against Novak was entered without personal jurisdiction over Novak. That court, therefore, also lacked jurisdiction to issue a writ of execution to enforce that judgment.[1]See Marks v. Cowles, 61 Ala. 299, 302 (1878) ("every right and interest springing out of, and dependent upon," a judgment "shares its fate and falls with it"). The trial court's judgment and the postjudgment execution order are reversed and the cause is remanded for the entry of a judgment dismissing Benn's claims without prejudice. See Rule 41(b), Ala. R. Civ. P.
REVERSED AND REMANDED WITH INSTRUCTIONS.
YATES, P.J., and CRAWLEY and THOMPSON, JJ., concur.
MURDOCK, J., dissents, with writing.
MURDOCK, Judge, dissenting.
I conclude that the trial court had "specific" in personam jurisdiction over Novak under the "effects" test established in Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).
We are not concerned here with "mere untargeted negligence," in the words of the Calder Court. 465 U.S. at 790, 104 S.Ct. 1482. The reputational harm to the plaintiff resulting from Novak's intentional defamation communicated through the use of an Internet posting was inherently suffered in Alabama, the place where the plaintiff lived and worked and maintained his reputation. The fact that Novak knew that the effects of his conduct would be felt in Alabama satisfied the due-process requirements for the exercise of personal jurisdiction over him. Novak, therefore, reasonably could have foreseen being haled into court in this State. See Calder, supra; Hugel v. McNell, 886 F.2d 1 (1st Cir.1989); Bochan v. La Fontaine, 68 F.Supp.2d 692 (E.Dist.Va.1999); California Software, Inc. v. Reliability Research, Inc., 631 F.Supp. 1356 (C.D.Cal.1986); compare Blumenthal v. Drudge, 992 F.Supp. 44 (D.D.C.1998).
The main opinion relies upon a three-pronged test articulated by the United States Court of Appeals for the Third Circuit *522 as its interpretation of Calder. See Imo Indus., Inc. v. Kiekert AG, 155 F.3d 254 (3d Cir.1998). Under the facts of a case such as that presented here, I find it difficult to appreciate a meaningful distinction between the application of the second and third prongs of that test. Even applying that test, however, I conclude that cases such as Elliott v. Van Kleef, 830 So.2d 726 (Ala.2002), are distinguishable from the present case. Novak's tortious activity in the present case was directed at the plaintiff, in the State of Alabama, in a way that the defendant-Arkansas attorney's negligent conduct in an Arkansas state-court proceeding in Elliott simply was not.
I therefore respectfully dissent.
NOTES
[1] Because the trial court lacked jurisdiction to issue a writ of execution, we do not reach Novak's contention that Internet domain names and federally registered trademarks are not amenable to execution. But see Dorer v. Arel, 60 F.Supp.2d 558, 559-61 (E.D.Va.1999) (indicating that neither domain name or trademark is properly subject to levy and sale).