Carol MORRIS, Administratrix of the Estate of Linda Louise Grimes, Deceased, Plaintiff–Appellant,

v.

SSE, INC., Defendant–Appellee.

No. 87–7184.

United States Court of Appeals, Eleventh Circuit.

April 27, 1988.

Denton, Dornan & Bilbo, Robert H. Tyler, Biloxi, Miss., and Larry Hallett, Mobile, Ala., for plaintiff-appellant.

Hand, Arendall, Bedsole, Greaves & Johnston, Paul W. Brock and Joe E. Basenberg, Mobile, Ala., for defendant-appellee.

Before ANDERSON, EDMONDSON and GOODWIN,* Circuit Judges.

ANDERSON, Circuit Judge:

Appellant Carol Morris ("Morris") appeals the dismissal of a wrongful death action she brought against appellee SSE, Inc. ("SSE"). The District Court for the Southern District of Alabama dismissed the action for lack of personal jurisdiction. In this appeal, Morris argues that she presented sufficient evidence to establish a prima facie case of personal jurisdiction over SSE. We agree. Consequently, we reverse the district court's dismissal and remand this case for further proceedings.

## BACKGROUND

This case arises from a parachuting accident which occurred in Grand Bay, Alabama in November 1982 that killed Linda Grimes, a Mississippi resident. The parachute equipment used by the decedent in her fatal jump included a "Sentinel Mark 2000" automatic activation device, serial number 8004, which was designed and manufactured by SSE. SSE is a Pennsylvania corporation whose corporate headquarters are in New Jersey. Carol Morris, administratrix of Grimes' estate and a Mississippi resident, brought the wrongful death action against SSE in October 1985 in the United States District Court for the South-

ern District of Mississippi. The amended complaint asserted three grounds for recovery: strict liability, negligence, and breach of warranty. Morris seeks $2 million compensatory and $3 million punitive damages.

Following SSE's motion to dismiss for lack of personal jurisdiction and improper venue, the case was transferred from the Southern District of Mississippi to the Southern District of Alabama pursuant to 28 U.S.C. § 1404(a) (1982) because a majority of the witnesses and evidence pertinent to the case was located there. In the proceedings in the Southern District of Alabama, SSE again moved to dismiss the action for lack of personal jurisdiction, alleging that it did not have enough contacts with Alabama. The evidence before the district court consisted of the deposition testimony and three affidavits of Stephen Snyder, the president and majority shareholder of SSE.[1] The parties do not contest the facts detailed below; their only dispute is over the legal significance of the facts.

SSE is incorporated under Pennsylvania law and its principal place of business is in New Jersey. Its primary business is the manufacture of peripheral equipment for parachute systems. Among the equipment manufactured by SSE is an "automatic activation device" whose commercial name is

---

* Honorable Alfred T. Goodwin, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

1. Snyder was deposed on July 16, 1986, prior to the transfer of this case to the Southern District of Alabama. The deposition testimony was properly before the District Court for the Southern District of Alabama, however, and we note that the court should have considered any of the deposition testimony pertinent to SSE's Alabama contacts. It is irrelevant that the deposition testimony was elicited for the purpose of establishing SSE's contacts with Mississippi during an earlier phase of the litigation.

Snyder's three affidavits were filed October 8, 1985, November 7, 1986, and February 19, 1987. The October 1985 affidavit focused primarily on SSE's contacts with Mississippi and contained no information relevant to the Alabama case which was not repeated in the subsequent affidavits. The November 1986 affidavit focused primarily on SSE's contacts with Alabama.

The February 1987 affidavit corrected a portion of Snyder's earlier deposition testimony in

which he erroneously stated that Gulf Air Sports was an SSE dealer. Morris moved to strike the affidavit because the district court issued its memorandum opinion and final judgment on February 17, 1987, two days before the affidavit was filed. However, the order dismissing the case was not filed until February 23, 1987, four days after the affidavit was filed, at which time the district court declined to rule on Morris' motion to strike on the basis that it had already entered judgment in the case.

Morris renews her motion to strike in this appeal. We note, however, that the district court granted SSE's motion to supplement the record on appeal with the February affidavit. Because we decide this appeal in Morris' favor on the basis of facts which presume that Gulf Air Sports was not an SSE dealer, we need not rule on her motion to strike, which if granted would only enhance the merits of her position that sufficient minimum contacts with Alabama exist to warrant personal jurisdiction over SSE.

the Sentinel Mark 2000. Linda Grimes used a Sentinel Mark 2000, serial number 8004, in her fatal parachute accident.

SSE sells its products solely through distributors and dealers. Distributors and dealers are distinguished only in that distributors order in greater volume from SSE. At the time of Grimes' parachute accident, SSE had distributors in California, Illinois, and New York. It had dealers in an unspecified number of states.

SSE generally does not solicit orders. Instead, the company usually is contacted by companies which see advertisements SSE places in national trade journals such as those published by the National Parachuting Organization. SSE admitted that it probably published such ads in the year preceding the accident. There was no evidence presented about whether the magazines containing the ads were sold or available in Alabama.

Between November 1981 and May 1984, SSE had a dealership arrangement with an Alabama company. The arrangement involved only the purchase of altimeters for ultralight aircraft; no Sentinel Mark 2000 devices were sold as part of this dealership arrangement. In the two and a half year period, altimeter sales having a total value of $450 were transacted between SSE and the Alabama company. SSE's total corporate sales over this period exceeded $2 million.

Device number 8004, which is the focus of the merits of this litigation, was sold by SSE to a Michigan dealer in April 1980. There is no evidence in the record explaining how device 8004, sold in Michigan, ended up in Alabama. On July 30, 1981, Gulf Coast Air Sports of Theodore, Alabama shipped number 8004 and two other Sentinel Mark 2000 devices to SSE, accompanied by the following handwritten letter:

> Enclosed you will find 3 MK 2000 automatic openers. # 8004, 2043 & 5038.
>
> # 8004—Calib. button (knob) does not latch in the extended position

# 2043—Inop

# 5038—Calib. button (knob) is rough & eratic. [sic]

> Please check all 3 units from start to finish.
>
> I would like to send 3 more in for a periodic inspection as soon as these are returned.
>
> Your diligence would be greatly appreciated
>
> > [signature]
> > Gulf Coast Air Sports
> > Rt 2 Box 366
> > Theodore Al. 36582
>
> We have available C–182, Twin Beech, DC–3 for your jumping pleasure.

Pursuant to the repair request, SSE replaced the batteries and the test/button spring in device 8004 and shipped it and the other two repaired devices to Gulf Coast Air Sports in October 1981. The total cost of the repairs was $123.21. There is no evidence that any other devices subsequently were sent to SSE for repair.

The district court denied Morris' motion for an evidentiary hearing and granted SSE's motion to dismiss. The court concluded:

> The plaintiff in this case has submitted no evidence to support its claim that defendant has the requisite contacts with the forum for the court to assert in personam jurisdiction over SSE, Inc. The only deposition on record seeks to establish the requisite contacts of defendant with Mississippi, where the action was originally filed. Without evidence, the plaintiff cannot carry his burden of establishing a prima facie case of jurisdiction.

Morris appeals from this judgment.

## DISCUSSION

The single issue raised in this appeal is whether the evidence of SSE's contacts with Alabama is sufficient to establish a prima facie case of specific personal jurisdiction over SSE.[2] We conclude that it is.

---

**2.** In *Helicopteros Nacionales de Columbia. S.A. v. Hall,* 466 U.S. 408, 414–17 nn. 8 & 9, 104 S.Ct. 1868, 1872–74 nn. 8 & 9, 80 L.Ed.2d 404 (1984), the Supreme Court noted that there are two types of personal jurisdiction: specific and general. Specific personal jurisdiction is founded

In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, non-resident defendant. *Delong v. Washington Mills*, 840 F.2d 843, 845 (11th Cir.1988); *Bracewell v. Nicholson Air Service, Inc.*, 748 F.2d 1499, 1504 (11th Cir. 1984). A prima facie case is established if the plaintiff presents sufficient evidence to defeat a motion for a directed verdict. The district court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony. *Delong*, 840 F.2d at 845; *Bracewell*, 748 F.2d at 1504. In addition, where the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must construe all reasonable inferences in favor of the non-movant plaintiff. *Delong*, 840 F.2d at 845.

The determination of whether a defendant is amenable to a forum's jurisdiction requires a two-part analysis. First, the defendant must purposefully establish sufficient "minimum contacts" with the forum state to satisfy due process requirements.[3] *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Burger King v. Rudzew-icz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). Unilateral action by the plaintiff or a third party cannot create the requisite "minimum contacts." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Rather, the defendant must perform "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King v. Rudzewicz*, 471 U.S. at 476, 105 S.Ct. at 2184, *quoting Hanson*, 357 U.S. at 253, 78 S.Ct. at 1239. Second, a forum's exercise of personal jurisdiction over a defendant must comport with "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158, *quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940). We examine each facet in turn.

The Supreme Court's most recent refinement of the personal jurisdiction analysis is found in *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, —— U.S. ——, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). The issue in *Asahi* was "whether the mere awareness on the part

on a party's contacts with the forum state that are related to the cause of action. General personal jurisdiction arises from a party's contacts with the forum state that are unrelated to the litigation.

We proceed on a theory of specific personal jurisdiction. Snyder's uncontroverted December 8, 1986, affidavit clearly establishes that SSE's contacts with Alabama not related to this suit fail to meet the "continuous and systematic" contacts required to establish general personal jurisdiction. *See Perkins v. Benquet Consolidated Mining Co.*, 342 U.S. 437, 438, 72 S.Ct. 413, 414, 96 L.Ed. 485 (1952); *Borg–Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1057 (11th Cir.1986).

**3.** This case presents no need to examine Alabama's long-arm jurisdictional statute because that statute authorizes a court to assert personal jurisdiction to the limits of federal due process. *See Alabama Power Co. v. VSL Corp.*, 448 So.2d 327, 328 (Ala.1984); *DeSotacho, Inc. v. Valnit Industries, Inc.*, 350 So.2d 447, 449 (Ala.1977) ("This court has recognized that the issue of jurisdiction pursuant to 'long-arm' statutes poses a federal question of whether subjection of a

nonresident corporation to the jurisdiction of Alabama courts comports with federal due process."); *Brock v. Hutto*, 617 F.Supp. 623, 629 (M.D.Ala.1985) ("Alabama's long-arm statute, Ala.R.Civ.P. 4.2(a)(2), authorizes the assertion of personal jurisdiction to the limits of federal law, that is, due process.")

We recognize that it is well-established in this circuit that in a diversity case, a federal district court adjudicating a motion to dismiss for lack of personal jurisdiction must determine whether assertion of jurisdiction comports with both state law and the due process requirements of the United States Constitution. *See, e.g., Attwell v. LaSalle National Bank*, 607 F.2d 1157, 1160 (5th Cir.1979), *cert. denied* 445 U.S. 954, 100 S.Ct. 1607, 63 L.Ed.2d 791 (1980); *Gold Kist Inc. v. Baskin–Robbins Ice Cream Co.*, 623 F.2d 375, 377 (5th Cir.1980); *Bankhead Enterprises, Inc. v. Norfolk and W. Ry. Co.*, 642 F.2d 802, 804 (5th Cir. Unit B 1981). However, where the forum's courts interpret the forum's long-arm statute to the limits of *federal* due process, we believe it is not necessary to apply state law; application of the federal *International Shoe* two-part analysis will suffice.

of a foreign defendant that the components it manufactured, sold, and delivered outside the United States would reach the forum state in the stream of commerce constitutes 'minimum contacts' between the defendant and the forum state such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.' " 107 S.Ct. at 1029, *quoting International Shoe*, 326 U.S. at 310, 66 S.Ct. at 154.[4]

In *Asahi*, a majority of the Court concluded that the "fair play and substantial justice" prong of *International Shoe* was not satisfied. The Court divided three ways on the minimum contacts issue, with no opinion receiving a majority of votes. Justice O'Connor, joined by three other justices, sets forth the most restrictive test of whether a non-resident party has sufficient contacts with a forum to justify that forum's assertion of jurisdiction. Her opinion concludes that merely placing a product into the stream of commerce, even with an "awareness that the stream of commerce may or will sweep the product into the forum State ...", is not enough to establish jurisdiction. *Asahi*, 107 S.Ct. at 1033. Justice O'Connor suggests four examples of additional conduct which might indicate the requisite intent or purpose to serve the market in the forum state: (1) designing the product for the market in the forum state; (2) advertising in the forum state; (3) establishing channels for providing regular advice to customers in the forum state; and (4) marketing the product through a distributor who has agreed to serve as a sales agent in the forum state. *Id.*

Justice Stevens, in a separate concurrence joined by two other justices, concludes that the O'Connor plurality misapplied its announced test to the facts of the case.[5] Justice Stevens suggests that it is difficult to draw the line between "mere awareness" that a component will find its way into the forum state and "purposeful availment" of the forum's market. He suggests that to determine whether or not conduct rises to the level of purposeful availment requires a constitutional determination focusing on the volume, the value, and the hazardous character of the goods introduced into the stream of commerce. *Id.* at 1038.[6]

Justice Brennan, joined by three other justices, authored the third concurrence.[7] His opinion concludes that placing a product into the stream of commerce is sufficient to constitute purposeful activity directed toward the forum state "[a]s long as the participant in this process is aware that the final product is being marketed in the forum State ..." because "the possibility of a lawsuit there cannot come as a surprise ... [n]or will the litigation present a burden for which there is no corresponding benefit." *Id.* at 1035. This is the broadest of the three "minimum contacts" tests put forth in *Asahi*.

■ We conclude that the assertion of Alabama's jurisdiction over SSE complies with the O'Connor test announced in *Asahi*. It is undisputed that SSE placed the Sentinel Mark 2000 devices into the nation-

---

**4.** *Asahi* stemmed from a product liability action brought against a Taiwanese tire manufacturer following a motorcycle accident in California in which a tire blew out, severely injuring the vehicle's riders. The injured riders brought suit against the tire manufacturer in California District Court. Following a $1 million award in the product liability action, the Taiwanese manufacturer brought an impleader action in California against Asahi, the Japanese manufacturer of the tire valves.

**5.** Justice Stevens apparently assumes *arguendo* that the O'Connor test is correct. We note, however, that he does not discount the correctness of the broader Brennan test. For the limited purpose of resolving this case, we apply Justice O'Connor's view, the narrowest of the three *Asahi* views. Necessarily, if personal jurisdiction exists under the narrower O'Connor test, it exists under the broader Stevens and Brennan tests.

**6.** On the facts of the case, Justice Stevens concluded that "a regular course of dealing that result[ed] in deliveries of over 100,000 units annually over a period of several years would constitute 'purposeful availment' even though the item delivered to the forum state was a standard product marketed throughout the world." *Asahi*, 107 S.Ct. at 1038.

**7.** Two justices joined both the Brennan and Stevens concurrences.

al stream of commerce, and several aspects of SSE's activity constitute "additional conduct" indicative of an intent or purpose to serve the Alabama market.

First, we believe that SSE's repair of device number 8004 is analogous to designing a product for the forum state, which is one of the "additional conduct" factors specified in the O'Connor opinion. Gulf Coast Air Sports in Theodore, Alabama, sent three automatic activation devices manufactured by SSE, including device # 8004, to SSE with explicit written instructions to repair several specific items and to "check all three units from start to finish." As the record indicates, the repair order was received from Alabama, performed, and the devices were sent back to Alabama. Because SSE performed the repairs and returned the devices, it cannot be said that Gulf Coast Air Sport's unilateral action created SSE's contacts with Alabama.

SSE argues that the repair issue is irrelevant to the case because Morris failed to assert that the repair was related to or the cause of the parachutist's death. Construing reasonable inferences in favor of Morris, as we must do given the posture of this case, we believe that Morris did sufficiently assert that the repair caused the injury.[8] Among other things, Count II of the Complaint claims that SSE's negligence in the design, inspection, and testing of device number 8004 caused Linda Grimes' accident. The letter from Gulf Coast Air Sports to SSE that accompanied the shipment specifically requested SSE to "check all three units from start to finish." This is equivalent to asking for a complete inspection of the products and SSE does not contend that they did not inspect device

8004 as requested. Also, the repair order indicates that "[p]reventative [m]aintenance, incl[uding] cleaning, adjust, & [t]est" may have been done on the three devices. (Emphasis added). Consequently, we conclude that Morris sufficiently alleged that the repair was related to the injury.[9]

Second, in the present posture of this case, there is a reasonable inference that SSE advertised in Alabama. It is undisputed that SSE advertised in national trade magazines during the year prior to the parachuting accident and that such advertisements were a major source of business for SSE. SSE presented no evidence and did not argue that the magazines were not sold or did not appear in Alabama during this period.

Finally, we believe that the Sentinel Mark 2000 falls within Justice Stevens' "hazardous product" category. It is obvious that parachuting is a hazardous activity, that device # 8004 was a component of the decedent's parachuting system, and that SSE was aware that Gulf Coast Air Sports conducted a parachute jumping operation. Thus it is clear that SSE was aware that it was sending a hazardous product to Gulf Coast Air Sports in Alabama and that the hazardous product would be used in Alabama.[10]

For these reasons, we hold that SSE has sufficient contacts with Alabama to satisfy the "minimum contacts" aspect of the jurisdiction analysis. We turn now to the fairness and equity of asserting Alabama's jurisdiction over SSE.

■ Once a court establishes that a defendant has purposefully directed certain

---

8. We note that because device number 8004 was inspected "from start to finish" by SSE, if # 8004 were a cause of the parachuting accident and if there were no deterioration in the device from the time of repair to the time of the accident, then there is inevitably a nexus between the repair and the accident.

9. SSE's counsel conceded at oral argument that if Morris sufficiently alleged that the repair was a relevant part of the cause of action, SSE loses its jurisdictional argument under the O'Connor Asahi analysis.

10. It is clear that the facts of this case do not meet the other two Stevens factors: value and volume. The total value of the repairs was $123.21 and only one transaction involving three devices is at issue. However, as is evident from Stevens' conclusion in Asahi, establishing sufficient "minimum contacts" does not require the presence of all three factors. In Asahi, there was value and volume, but not a hazardous product. Here, there is minimal value and volume, but a highly hazardous product.

of its activities toward a forum, as we conclude above, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 105 S.Ct. at 2185. "A court must consider the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief. It also must weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.'" *Asahi*, 107 S.Ct. at 1034, *quoting World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564. "When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Id.* Such is the case here.

In the present case, SSE is burdened with coming to Alabama to defend against Morris' suit. Several factors, however, lessen the burden on SSE. As the Supreme Court noted in *McGee v. International Life Insurance Co.*, 355 U.S. 220, 222–23, 78 S.Ct. 199, 201–02, 2 L.Ed.2d 223 (1957):

> Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a state where he engages in economic activity.

Since 1957, the year of the *McGee* decision, improvements in transportation and communication have improved many times over. *See World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564. These improvements significantly decrease SSE's burden.

Second, "[w]hen a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to consumers, or, if the risks are too great, severing its connection with the State." *Id.* at 297, 100 S.Ct. at 567, *quoting Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1239. In the present case, SSE has met the "purposeful availment" prong. Consequently, if SSE viewed the risks as too great, it could have chosen not to repair device number 8004.

In the present case, Alabama has an interest in seeing that persons using products purposefully sent into the state are not seriously injured because of a product defect. In addition, obtaining the most efficient resolution of the controversy suggests that Alabama is an appropriate forum for such a resolution. As the District Court for the Southern District of Mississippi noted when it transferred the case to the Southern District of Alabama, "It appears that the Southern District of Alabama is the proper venue for this cause. It is where the alleged accident occurred, diversity jurisdiction exists, and a majority of witnesses reside." Certainly evidence and witnesses relating to the accident itself are in Alabama. In addition, witnesses who can testify about the chain of custody of number 8004 upon its repair are located in Alabama. Admittedly, witnesses and evidence concerning number 8004's design and repair are located in Pennsylvania and New Jersey, but these are not demonstrably better forums for the efficient resolution of this case. Finally, any clash between the states in furthering fundamental substantive social policies can be accommodated through choice-of-law rules. *See Burger King*, 105 S.Ct. at 2185.

In summary, we conclude that SSE purposefully availed itself of the Alabama market for Sentinel Mark 2000 automatic activation devices by placing the devices into the national stream of commerce, advertising in Alabama, and subsequently repairing the particular device, number 8004, and returning it into the Alabama market for use there in the hazardous sport of parachuting. In addition, we conclude that

it is entirely fair and reasonable to require SSE to defend itself in Alabama in this action. Accordingly, we reverse the judgment of the district court and remand for proceedings consistent with this opinion.[11]

REVERSED and REMANDED.

EDMONDSON, Circuit Judge, concurring:

I concur, although I have doubts that today's court has correctly decided this case. I write separately to stress two points that necessarily limit the future impact of our decision.

First, it is important that the product in this case was perceived by the court as one that poses unusually great safety risks to persons. Because a parachute opening device must work correctly or someone likely

will be killed or injured, repairers of such items probably can expect to be haled into courts in distant states if the repairers send the items there.

Second, a concession narrowed the dispute before us. At oral argument, SSE's counsel (correctly or incorrectly) stated that if Morris sufficiently alleged that the repair was a relevant part of the cause of action, SSE loses its jurisdictional argument under the O'Connor *Asahi* analysis.

---

**11.** In its brief, SSE urges us to affirm the district court on alternate grounds. Specifically, SSE argues that we should undertake a choice-of-law analysis and determine that Alabama law governs the present case. SSE then contends that the statute of limitations blocks Morris' strict liability and negligence claims and that Alabama's wrongful death statute does not permit recovery pursuant to breaches of warranties.

We cannot affirm on these grounds. The well-settled rule is that "a prevailing party may defend a judgment on any ground which the law and the record permit as long as it *does not expand the relief granted by the court*." *Furness Withy (Chartering), Inc., Panama v. World Energy Systems Associates, Inc.*, 772 F.2d 802, 808 (11th Cir.1985) (emphasis added) (citing *United*

*States v. New York Telephone Co.*, 434 U.S. 159, 166 n. 8, 98 S.Ct. 364, 369 n. 8, 54 L.Ed.2d 376 (1977)). Dismissal for lack of personal jurisdiction is without prejudice and the plaintiff still may sue the defendant in a forum where personal jurisdiction can be obtained. Dismissal on the alternate grounds urged by SSE would mean Morris could not sue SSE in *any* forum. Thus, to rule on SSE's alternate grounds would expand the relief granted by the district court.

In addition, prudential considerations suggest a remand to the district court because it has expressed no views on SSE's alternate grounds and because determining the validity of SSE's alternate grounds requires intricate applications of facts to law, once the governing law is determined.