Ernest Edwin **HUEY**, Jr., **Plaintiff,**

v.

**AMERICAN TRUETZSCHLER CORP., et al., Defendants.**

No. Civ.A. 98–T–795–N.

United States District Court,
M.D. Alabama,
Northern Division.

May 14, 1999.

J. Greg Allen, Jon Cole Portis, Beasley, Allen, Crow, Methvin, Portis & Miles, PC, Montgomery, AL, for plaintiff.

Michael Baird Beers, Constance T. Buckalew, Beers Anderson Jackson Nelson Hughes & Patty, PC, Montgomery, AL, James B. Carlson, Rives & Peterson, Birmingham, AL, Larry W. Harper, Porterfield, Harper & Mills, P.A., Birmingham, AL, William H. Hart, Hart Buckley & Wallace, PC, Dallas, TX, John D. Herndon, Huie, Fernambucq & Stewart, Birmingham, AL, Edward A. Hosp, State of Alabama Governor's Office, Montgomery, AL, Champ Lyons, III, Rives & Peterson, Birmingham, AL, Christopher Stanley Rodgers, Huie, Fernambucq & Stewart, Birmingham, AL, for defendants.

### ORDER

MYRON H. THOMPSON, District Judge.

Plaintiff Ernest Edwin Huey, Jr., has brought this products-liability action against a number of defendants, including Temafa GmbH, a German company. Huey alleges that he suffered serious injuries while cleaning a machine that Temafa defectively designed and manufactured. He rests his lawsuit on state-law claims of negligence, wantonness, and liability under the Alabama Extended Manufacturer's Liability Doctrine (commonly known as the "AEMLD"). Jurisdiction over the case, which was removed from the Circuit Court for Elmore County, Alabama, is proper under 28 U.S.C.A. § 1441 (removal jurisdiction) and 28 U.S.C.A. § 1332 (diversity-of-citizenship jurisdiction).

This cause is now before the court on a motion to dismiss for lack of personal jurisdiction filed by Temafa. For reasons to follow, the court will deny the motion.

## I. STANDARD FOR MOTION TO DISMISS

■ In the context of a motion to dismiss in which no evidentiary hearing is held, a plaintiff need establish only a prima-facie case of jurisdiction. *See Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir. 1990). The court, in considering the motion, must take all allegations of the complaint that the defendant does not contest as true, and, where the parties' affidavits conflict, the court must construe all reasonable inferences in favor of the plaintiff. *See id.*

## II. BACKGROUND

On October 4, 1997, Huey severely injured his right hand while attempting to clean a machine at Russell Corporation's Gwaltney Spinning Plant in Wetumpka, Alabama.[1] The machine was designed, manufactured, and distributed by Temafa, a corporation with its principal place of business in Bergisch Gladbach, Germany.[2] The machine, which is called the Clean Star, is used in the manufacture of textiles.

Temafa has had no regular direct contacts with the State of Alabama. It has never operated a business or been licensed or authorized to do so here, owned property or had bank accounts or offices here, advertised there, paid taxes here, or had a telephone listing, a post-office box or another mailing address here.[3]

The Russell Corporation purchased four Temafa Clean Star machines for its plants in Alabama.[4] Three are in Russell's Alexander City plant, and one is in the Wetumpka plant. Russell purchased those

---

1. Complaint, filed June 11, 1998, at ¶ 10–11; Plaintiff's Opposition to Defendant Temafa GMBH's Motion to Dismiss for Lack of Jurisdiction (hereafter "Plaintiff's Opposition"), filed March 12, 1999, exhibit B (deposition of David Smith) (hereafter "Smith Deposition") at 11.

2. Plaintiff's First Amendment to the Complaint, filed August 31, 1998, at ¶ 3.

3. Affidavit of Oliver L. Sharf, filed February 23, 1999.

4. Plaintiff's Opposition, exhibit 0 (fax from Temafa to American Truetzschler, dated May 19, 1994).

machines from American Truetzschler, a corporation with its primary place of business in Charlotte, North Carolina.[5] However, Temafa shipped the machine involved in Huey's accident directly to Russell in Alabama.[6]

American Truetzschler served as a representative for Temafa in the United States.[7] During the time that it represented Temafa, American Truetzschler sold nine Temafa machines, including the four it sold to Russell.[8] Temafa sent engineers to Charlotte to train the American Truetzschler technicians.[9] David Smith, an area service inspector for American Truetzschler who had received training from Temafa, installed the Temafa machine that injured Huey.[10] Smith's service area included the southeastern states; however, most of the textile mills he serviced were in Alabama and southern Georgia.[11]

American Truetzschler and Temafa ultimately severed their relationship because American Truetzschler was representing other manufacturers that built machines similar to Temafa's. Temafa then entered an agreement with Louis P. Batson Company, a South Carolina-based corporation that serves as a sales agent for textile-machinery manufacturers, by which Batson agreed to represent Temafa in the United States.[12] Temafa also sent a representative to the United States to train Craig Chapman, a Batson employee, on how to make adjustments and settings for the Temafa Clean Star machines.[13]

On April 15, 1994, after several workers were injured on the Temafa machines at the Russell plant in Alexander City, two Temafa representatives went to the plant to consult with Batson and Russell about what type of safety improvements could be made.[14] After that meeting, Temafa sent a fax to American Truetzschler describing the meeting and stating that three different types of equipment were needed for all four of the Temafa machines owned by Russell.[15] The note states:

> "*Presently Russell is not considering any legal action!*
>
> \*    \*    \*    \*    \*    \*
>
> "Due to product liability reasons, Russell Corporation wants these modifications to be carried out by TEMAFA. TEMAFA remains fully liable for this!" [16]

The note concludes that a proposal "is to be drawn up" with the mentioned modifications.[17] Thereafter, Temafa asked American Truetzschler to install safety devices in the machines at Russell.[18] Also after the visit, Temafa corresponded with Batson regarding the design of safety devices discussed during the visit to Russell.[19] Te-

---

5. *Id.;* Complaint at ¶ 2.

6. Plaintiff's Opposition, exhibit A (deposition of Detlef Jaekel) (hereafter "Jaekel Deposition") at 39. *See also* Plaintiff's Opposition, exhibit F (Detlef Jaekel's Answers to Interrogatories) at ¶ 21 (stating that only Temafa and Russell Corporation had been in possession of the machine that injured Huey).

7. Plaintiff's Opposition, exhibit C (deposition of Howard Eugene Baker) (hereafter "Baker Deposition") at 14.

8. Jaekel Deposition at 20–21.

9. Smith Deposition at 22.

10. *Id.* at 9, 11.

11. *Id.* at 11.

12. Baker Deposition at 14–15; Plaintiff's Opposition, exhibit D (deposition of Art Davis) (hereafter "Davis Deposition") at 12.

13. Plaintiff's Opposition, exhibit E (deposition of Craig Chapman) at 11–12.

14. Plaintiff's Opposition, exhibit N (Call Report, dated May 5, 1994); Baker Deposition at 22.

15. Plaintiff's Opposition, exhibit O, (fax from Temafa to American Truetzschler, dated May 19, 1994).

16. *Id.*

17. *Id.*

18. Jaekel Deposition at 59. American Truetzschler turned down Temafa's request. *Id.*

19. Plaintiff's Opposition, exhibit G (faxes between Howard Baker and Oliver Sharf).

mafa offered to send certain safety equipment upon request to Batson for Russell's Temafa machines.[20] It is unclear whether that equipment was ever sent or purchased.

As stated, Huey was injured on one of the Temafa machines on October 4, 1997, and this lawsuit followed on June 11, 1998.

## III. DISCUSSION

When a defendant challenges personal jurisdiction, the plaintiff has the twin burdens of establishing that personal jurisdiction over the defendant comports with (1) the forum state's long-arm provision and (2) the requirements of the due-process clause of the fourteenth amendment to the United States Constitution. *See Olivier v. Merritt Dredging Co.,* 979 F.2d 827, 830 (11th Cir.1992), *cert. denied,* 507 U.S. 983, 113 S.Ct. 1577, 123 L.Ed.2d 145 (1993). Because Alabama's long-arm provision, Ala.R.Civ.P. 4.2(a), authorizes the assertion of personal jurisdiction to the limits of the United States Constitution, a plaintiff may carry both these burdens by demonstrating that personal jurisdiction over the defendant meets the requirements of federal due process. *Id.* Due process requires, first, that the defendant have "certain minimum contacts" with the forum state and, second, that the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Burnham v. Superior Court of California, County of Marin,* 495 U.S. 604, 618, 110 S.Ct. 2105, 2114–15, 109 L.Ed.2d 631 (1990) (quoting *International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

### A. Minimum Contacts

The Supreme Court has identified two types of personal jurisdiction: specific and general. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–15 nn. 8 & 9, 104 S.Ct. 1868, 1872 nn.

8 & 9, 80 L.Ed.2d 404 (1984). General jurisdiction arises from a party's frequent contacts with the forum state *unrelated* to the litigation. *See id.* at 414 n. 9, 104 S.Ct. at 1872 n. 9. Specific jurisdiction derives from a party's contacts with the forum that are *related* to the cause of action. *Id.* at 414 n. 8, 104 S.Ct. at 1872 n. 8. Huey invokes only specific jurisdiction.

To constitute minimum contacts for purposes of specific jurisdiction, each defendant's contacts with the applicable forum must satisfy three criteria: first, the contacts must be related to the plaintiff's cause of action or have given rise to it; second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws; and third, the contacts must be such that the defendant should reasonably anticipate being haled into court in the forum. *See Vermeulen v. Renault, U.S.A., Inc.,* 985 F.2d 1534, 1546 (11th Cir.1993), *cert. denied,* 508 U.S. 907, 113 S.Ct. 2334, 124 L.Ed.2d 246 (1993). Temafa's contacts with Alabama satisfy these three criteria.

Temafa had contacts with Alabama related to the cause of action and giving rise to the cause of action. Temafa established indirect contacts with Alabama by entering agreements with American Truetzschler and Batson to act as its sales representative in the United States, including Alabama. American Truetzschler sold Temafa machines to Russell Corporation in Alabama in its role as Temafa's representative. Temafa had direct contact with Alabama when it shipped the machine that injured Huey, as well as three others, to Russell. Furthermore, Temafa representatives visited a Russell plant in Alabama to discuss safety improvements to a Clean Star machine, agreed to develop and later proposed safety improvements for Russell's Clean Star machines, and at-

---

20. Plaintiff's Opposition, exhibits H, I, J, K (correspondence between Temafa and Batson).

tempted to engage American Truetzschler to install safety equipment in the machines. These contacts are closely related to Huey's cause of action.

By these contacts, Temafa purposefully availed itself of the privilege of conducting activities within the forum. The Supreme Court's most recent analysis of the purposeful-availment requirement was in *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). In that case, which involved an indemnification action brought in California by Cheng Shin, a Taiwanese tire manufacturer, against Asahi, the Japanese tire-valve manufacturer that had sold an allegedly defective component part to Cheng Shin, a majority of the Court held that the exercise of jurisdiction over Asahi did not comport with due process because the "fair play and substantial justice" prong was not satisfied. The Court, however, divided as to whether Asahi had minimum contacts with California, with no opinion receiving a majority of votes. Justice O'Connor, joined by three justices, set forth the most restrictive test of whether a nonresident party has sufficient contacts with a forum to justify the assertion of personal jurisdiction. *See Vermeulen*, 985 F.2d at 1547–48; *Morris v. SSE, Inc.*, 843 F.2d 489, 493 & n. 5 (11th Cir.1988). Justice O'Connor concluded that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State," even if the defendant is aware "that the stream of commerce may or will sweep the product into the forum State." *Asahi*, 480 U.S. at 112, 107 S.Ct. at 1032. However, she suggested that placement of a product into the stream of commerce plus additional conduct indicating an intent or purpose to serve the market in the forum state would suffice to constitute purposeful availment. *See id.* Justice O'Connor offered the following examples of such additional conduct: "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to

customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.* at 112, 107 S.Ct. at 1032.

Justice Brennan, joined by three other justices, rejected Justice O'Connor's contention that, where a defendant places a product into the stream of commerce and is aware that the product may or will be sold in a given forum, additional conduct would be needed to show purposeful availment. *See id.* at 116–17, 107 S.Ct. at 1034–35. Justice Brennan reasoned:

> "The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise. Nor will the litigation present a burden for which there is no corresponding benefit. A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity. These benefits accrue regardless of whether that participant directly conducts business in the forum State, or engages in additional conduct directed toward that State."

*Id.* at 117, 107 S.Ct. at 1034–35. Thus, under Justice Brennan's approach, a defendant that places products into the stream of commerce and is aware that the products may be sold in the forum state has purposefully availed itself of the benefits of that state's laws.

Finally, Justice Stevens, joined by two of the justices who concurred with Justice Brennan, declined to join Justice O'Connor's holding regarding minimum contacts, finding the discussion unnecessary given the Court's conclusion on the 'fair play and substantial justice' requirement.

Nevertheless, Justice Stevens opined that Justice O'Connor had misapplied the purposeful-availment test to the facts of the case and questioned her assumption that "an unwavering line can be drawn between 'mere awareness' that a component will find its way into the forum State and 'purposeful availment' of the forum's market." *Id.* at 122, 107 S.Ct. at 1037. Justice Stevens suggested that whether a defendant's conduct rises to the level of purposeful availment requires a "constitutional determination that is affected by the volume, the value, and the hazardous character of the components" and explained that ordinarily "a regular course of dealing that results in deliveries of over 100,000 units annually over a period of several years would constitute 'purposeful availment' even though the item delivered to the forum State was a standard product marketed throughout the world" and only a small percentage of those units ended up in the forum. *Id.* However, Justice Stevens did not dispute the relevance of the examples of 'additional conduct' provided by Justice O'Connor.

Under any of these analyses, Temafa's conduct constitutes purposeful availment. Temafa manufactures machinery for use in textile production. Alabama is a major textile-producing state.[21] Temafa engaged sales agents to service the American market. Those sales agents sold Temafa machinery in Alabama. Temafa cannot now claim that it did not intend to service Alabama, one of the major textile-producing states. Because Temafa placed its machines into the stream of commerce with the awareness that its products would likely be sold in Alabama, the test articulated by Justice Brennan is satisfied.

Justice O'Connor's 'additional conduct' test is also satisfied. First, Temafa engaged American Truetzschler and Batson to serve as its sales representatives in the United States. Both companies are based in the South and sell and service textile

machinery in the southern states, including Alabama. As Batson representative David Smith testified, most of the textile manufacturers he serviced were in Alabama and south Georgia. Temafa, as a manufacturer of machinery used in textile mills, surely sought representatives who would market its products in Alabama. Thus, it is fair to conclude that Temafa marketed its machines through distributors who agreed to serve as sales agents in Alabama. Second, Temafa designed safety equipment for use in Alabama on Russell's machines. This is analogous to designing products for use in the forum state. *See Morris,* 843 F.2d at 494 (repairing a device is analogous to Justice O'Connor's factor of designing a product for the forum state). Finally, Temafa established channels for providing regular advice to its customers in Alabama by training American Truetzschler and Batson engineers to service the machines. Thus, Temafa meets three of the four 'additional conduct' factors suggested by Justice O'Connor, any of which would be sufficient to establish purposeful availment.

Finally, Temafa's conduct constitutes purposeful availment under Justice Stevens's analysis. Although there is no evidence suggesting a large volume of sales by Temafa in Alabama, the company was marketing a dangerous device, a factor considered important by Justice Stevens. Furthermore, as discussed earlier, Justice Stevens did not dispute the relevance of the 'additional conduct' factors listed by Justice O'Connor, but instead suggested that Justice O'Connor should have considered additional factors before concluding that Asahi lacked minimum contacts. Thus, Temafa's relatively small number of sales in Alabama does not preclude a finding of purposeful availment under Justice Stevens's approach. The court finds that Temafa purposefully availed itself of the privilege of conducting activities in Alabama.

---

21. The court takes judicial notice of this fact pursuant to Federal Rule of Evidence 201(b), which provides that a court may take judicial notice of a fact "not subject to reasonable dispute in that it is ... generally known within the territorial jurisdiction of the trial court."

The court also finds that Temafa's contacts were such that it should have reasonably anticipated being haled into court here. Temafa shipped the Clean Star machines directly to Russell's plants in Alabama. The machine was potentially dangerous, a fact which Temafa, as the manufacturer, should have known when it shipped the machines and definitely learned thereafter. After learning that the machines had injured several people at Russell, Temafa undertook to design safety equipment for those machines in Alabama. Temafa should have anticipated that, if it did not fix the dangerous condition of the machinery by providing adequate safety equipment, it could be sued in Alabama. Furthermore, the evidence shows that Temafa was aware of its potential liability for injuries caused by the machines in Alabama. Although the evidence does not state explicitly that Temafa anticipated being sued in Alabama, it is a fair assumption that Temafa anticipated suit here, given that any injuries from Russell's machines necessarily would take place in Alabama. In sum, Temafa's contacts were such that it reasonably should have anticipated being sued in an Alabama court. Thus the court concludes Temafa has sufficient minimum contacts to sustain this court's exercise of personal jurisdiction over Temafa.

B. Fair Play and Substantial Justice

■ The court also must determine whether exercise of jurisdiction over Temafa complies with traditional notions of fair play and substantial justice, the second aspect of jurisdictional due process. The factors entering into an analysis of the fairness of jurisdiction over a given defendant include, among others, the burdens imposed on that defendant, the interests of the forum state in the ability of the plaintiffs to maintain suit therein, and the plaintiff's interest in obtaining relief. *Asahi,* 480 U.S. at 113, 107 S.Ct. at 1033. The court is well aware that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi,* 480 U.S. at 114, 107 S.Ct. at 1033. However, "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum will justify even the serious burdens placed on the alien defendant." *Id.*

The court finds that exercise of jurisdiction over Temafa comports with traditional notions of fair play and substantial justice. Unlike the plaintiff in *Asahi,* Huey is not a foreign corporation seeking indemnification but instead an Alabama citizen who seeks relief for the serious injuries he suffered as a result of an alleged defect in a machine built by the defendant. *See Vermeulen,* 985 F.2d at 1551. Huey's interest in having his case adjudicated in Alabama "is manifest." *Id.*

The subject matter of the litigation also distinguishes this case from *Asahi.* Whereas *Asahi* was about indemnification, this case is about product safety. Alabama has "a compelling interest in protecting persons within its borders from unsafe products that find their way into the" state. *Id.* (citing *Morris,* 843 F.2d at 495). California had no similarly compelling interest in adjudicating the indemnification action in *Asahi.*

The court may also consider the efficiency of litigating the case in one forum as opposed to another in analyzing 'fair play and substantial justice.' *See Vermeulen,* 985 F.2d at 1552. Here the interests of efficiency dictate adjudicating the case in Alabama. Although witnesses and evidence concerning the Temafa Clean Star's manufacture and design are located in Germany, evidence and witnesses concerning the accident itself are located primarily in and around Alabama. *See id.* Furthermore, dismissal of Temafa from the suit "would not end the litigation, but would merely splinter it," leaving Huey and the other defendants in Alabama, while forcing Huey to proceed against Temafa, if at all, in Germany. *Id.* "Thus, efficient resolution of this case suggests that jurisdiction

should be asserted over [Temafa] in [Alabama]." *Id.*

Temafa indisputably does have a substantial interest in having the dispute adjudicated in Germany. However, Temafa cannot be surprised that it is being haled into an Alabama court. Moreover, "in light of the burden that would be caused [Huey] if the case were adjudicated in [Germany], the burdens on [Temafa] caused by adjudication in [Alabama] are by no means unfair." *Id.* at 1552 (citing *Delong Equipment Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 850, 854 (11th Cir.1988)). Thus, the court holds that jurisdiction over Temafa in an Alabama court comports with traditional notions of fair play and substantial justice.[22]

Of course, the court's order today does not prevent the defendants from reasserting their jurisdictional arguments should discovery uncover additional evidence to support their position, or after trial. *See Bracewell v. Nicholson Air Services, Inc.*, 748 F.2d 1499, 1504 (11th Cir.1984).

Accordingly, it is ORDERED that the motion to dismiss filed by defendant Temafa GmbH on February 16, 1999, is denied.

---

**22.** This court granted a motion to dismiss for lack of personal jurisdiction filed by Temafa in *Luckie v. Batson Yarn & Fabric Machinery, Inc.*, No. 96–T–1101–E (M.D.Ala.), another case involving a person allegedly injured by a Temafa machine. However, the plaintiff in that case did not contest Temafa's motion to dismiss. *See Luckie*, Letter Brief, filed December 12, 1996, and Order, entered December 20, 1996. Thus, the resolution of Temafa's motion to dismiss in the *Luckie* case does not persuade the court that it does not have personal jurisdiction over Temafa in this case.