Elwood I. KAPLAN and Norma Kaplan, Plaintiffs,

v.

DAIMLERCHRYSLER, A.G. f/k/a Daimler–Benz Aktiengesellschaft and Mercedes–Benz U.S.A., Inc. f/k/a Mercedes–Benz of North America, Inc., Defendants.

No. 2:99–CV–493–FTM–26D.

United States District Court, M.D. Florida, Tampa Division.

June 14, 2000.

---

David W. Bianchi, Stewart, Tilghman, Fox & Bianchi, P.A., Miami, FL, for Elwood I. Kaplan, plaintiff.

Myron Shapiro, Kenn W. Goff, Herzfeld & Rubin, Miami, FL, for defendants.

## ORDER

LAZZARA, District Judge.

Before the Court is Defendant Daimler-Chrysler, A.G.'s Motion to Dismiss Complaint for Lack of Personal Jurisdiction (Dkt.22), Plaintiffs' Memorandum in Opposition (Dkt.27), and several affidavits, exhibits, and authorities.[1] After careful con-

---

1. Plaintiffs filed a copy of *Daimler–Benz, A.G.* *v. Olson*, 2000 WL 296700 (Tex.App. Mar.23,

siberation of the file, the Court is of the opinion that the motion should be denied.

### Pertinent Facts

This law suit arose from an automobile accident in Florida resulting in the loss of Mr. Elwood I. Kaplan's arm. Mr. Kaplan had purchased a 1999 S400 Mercedes–Benz from an authorized dealer in Ohio, where he lives part of the year. The State of Florida issued a title for the car, and Mr. Kaplan drove it in Florida, where he lives part of the year. On November 16, 1998, Mr. Kaplan was driving the car in Naples, Florida, when he was struck by another car. The passenger's side door airbag failed to deploy. This action ensued against DaimlerChrysler, A.G. (DaimlerChrysler)[2] as the manufacturer of the vehicle and against Mercedes–Benz U.S.A., Inc. (MBUSA) as the distributor and retailer. The sole issue is whether Daimler-Chrysler may be subjected to personal jurisdiction in Florida.

DaimlerChrysler manufactured Mr. Kaplan's 1999 S400 Mercedes–Benz in the Federal Republic of Germany. Daimler-Chrysler is a German stock corporation, or Aktiengesellschaft, with its effective place of business in Stuttgart, Germany.[3] DaimlerChrysler does not sell, nor has it sold, Mercedes–Benz automobiles anywhere in the United States. MBUSA, a wholly-owned subsidiary of DaimlerChrysler, holds, and at all relevant times held, the exclusive right to import, distribute, and advertise Mercedes–Benz vehicles and component parts within the United States. DaimlerChrysler does not exercise day-to-day control over MBUSA in the sales of vehicles or component parts. The vehicles are sold in Germany to MBUSA for distribution in the United States. MBUSA has a regional office in Jacksonville, Florida.

The owner's manual, which is printed in Germany in the English language, contains an introductory message with the following closing: "We extend our best wishes for many miles of safe, pleasurable driving. Daimler–Benz Aktiengesellschaft." The speedometer on the 1999 S400 at issue displays speed in miles per hour, rather than kilometers. The emission systems warranty contained in the owner's manual provides that "(1) the vehicle was designed, built and equipped so as to conform at the time of sale to the original owner with the then applicable regulations issued by the Federal Environmental Protection Agency under authority of the Federal Clean Air Act as amended."

### Florida's Long-arm Statute

■ In determining personal jurisdiction over a foreign manufacturer, as in this case, the courts employ a two-prong test. See *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir.1996).[4] The first prong is the statutory analysis, or application of the long-arm statute. The second prong is the constitutional analysis, which envelops the concerns of satisfying

---

2000). (Dkt.34). Defendant DaimlerChrysler, A.G. objected (Dkt.36), setting forth various reasons why this Court should not consider the opinion. The Court is free to consider any authority submitted by the parties, but it does so with the knowledge that any authority may or may not be binding precedent. A state appellate court decision from Texas is not binding in this case which requires an analysis of Florida's long-arm statute in conjunction with the constitutional mandates under the Due Process Clause.

**2.** Daimler–Benz merged with Chrysler in November 1998 to form DaimlerChrysler, A.G.

**3.** According to the general counsel for DaimlerChrysler, the "effective" place of business is the German equivalent of "principal" place of business.

**4.** "First we must determine whether the Florida long-arm statute provides a basis for personal jurisdiction. If so, then we must determine whether sufficient minimum contacts exist between the defendants and the forum state so as to satisfy 'traditional notions of fair play and substantial justice' under the Due Process Clause of the Fourteenth Amendment." *Id.*, citing *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir.1996) (quoting *International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

due process. As recently espoused by the Florida Supreme Court, the long-arm statute "bestows broad jurisdiction on Florida courts." *See Execu–Tech Bus. Sys., Inc. v. New Oji Paper Co.,* 752 So.2d 582, 584 (Fla.2000). "The second prong—i.e.,—the constitutional prong, is controlled by United States Supreme Court precedent interpreting the Due Process Clause and imposes a more restrictive requirement." *Id.*

Addressing the first prong, section 48.193(1)(f)2, Florida Statutes (1999), the applicable statute in this products liability case, provides:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

> (f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

> 2. Products, materials or things processed, serviced or manufactured by the defendant anywhere were used or consumed within the state in the ordinary course of commerce, trade or use.

This claim involves an injury which either arose out of or was related to the defendant's contacts with Florida—an accident involving the Mercedes–Benz vehicle which occurred in Florida. Thus, "specific" rather than "general" jurisdiction may be exercised.[5] "General" jurisdiction may be exercised only when the foreign manufacturer has "substantial and not isolated activity" in the state under section 48.193(2). In this case, the Court need not analyze jurisdiction using the more stringent "general" jurisdiction framework, because this case presents a set of facts conducive to analysis under the Court's "specific" jurisdiction.

■ Most of the decisions from Florida courts regarding the issue of long-arm jurisdiction turn on the constitutional prong of the analysis. *See, e.g., Shin–Kobe Elec. Mach. Co. v. Rockwell,* 750 So.2d 67 (Fla. Dist.Ct.App.1999) (without relying or even citing the long-arm statute, the court found no personal jurisdiction over a Japanese manufacturer of a battery sold only in Japan that made its way to Florida as part of a forklift; court resolved issue on minimum contacts test citing *Asahi Metal Indus. Co. v. Superior Ct. of Cal.,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).[6] Applying the language of the statute, the 1999 S400 Mercedes Benz was manufactured by DaimlerChrysler in Germany (anywhere) and was used within Florida in the ordinary course of commerce. The more pertinent questions arise under the constitutional analysis.

---

5. Specific versus general jurisdiction may be explained as follows:

 "Specific jurisdiction" may be exercised "over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984). By contrast, "general jurisdiction" may be exercised "over a defendant in a suit not arising out of or related to the defendant's contacts with the forum ..." *Id.* at 414 n. 9, 104 S.Ct. at 1872 n. 9 *See United States Sec. and Exch. Comm'n v. Carrillo,* 115 F.3d 1540, 1542 n. 2 (11th Cir. 1997).

6. Asahi manufactured tire valve assemblies in Japan and sold them to companies in Japan. After the tire valve assemblies were incorporated into tires by tire manufacturers, the tires were sold all over the world. In the plurality decision of *Asahi,* the Supreme Court created the so-called "stream of commerce plus" test by reasoning that additional conduct beyond placing the product into the stream of commerce would be necessary to constitute acts purposefully directed toward the forum state.

### Due Process: Minimum Contacts

The Eleventh Circuit has delineated a three-step test based on Supreme Court precedent for determining whether constitutional minimum contacts have been established by the plaintiff. *See Vermeulen v. Renault*, 985 F.2d 1534, 1546 (11th Cir. 1993). "First, the contacts must be related to the plaintiff's cause of action or have given rise to it." *Id.* (omitting citations). "Second, the contacts must involve 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . ., thus invoking the benefits and protections of its laws.'" *Id.* (omitting citations). "Third, the defendant's contacts with the forum must be 'such that [the defendant] should reasonably anticipate being haled into court there.'" *Id.* (omitting citations).

In *Vermeulen*, the Eleventh Circuit discussed in great detail the evolution of the "stream of commerce plus" theory of personal jurisdiction, which encompasses the last two steps in the three-step analysis for minimum contacts.[7] While foreseeability alone may not determine personal jurisdiction, it is relevant to the analysis. Under the "stream of commerce plus" test articulated by the majority in the plurality decision of *Asahi*, there must be additional factors above and beyond placing a product into the stream of commerce. *See Vermeulen*, 985 F.2d at 1546–48. The *Vermeulen* court quoted from the concurring opinions in *Asahi* and concluded that "the current state of the law regarding personal jurisdiction is unsettled." *See id.* at 1548.

 Taking the "reasonable anticipation" (third) step next, several premises relied on by the *Vermeulen* court in determining that personal jurisdiction existed over a foreign car manufacturer may be used in the analysis of whether Daimler Chrysler has reason to anticipate being haled into court in Florida in this case.

The fact that title to the Mercedes–Benz vehicles passes to MBUSA in Germany rather than in the United States "in no way determines the degree of contacts" between DaimlerChrysler and the United States. *See id.* (truly international business may not shield itself from suit by well-crafted business restructuring). The fact that DaimlerChrysler does not maintain a direct physical presence in the United States "does not necessarily mean that no minimum contacts exist" between DaimlerChrysler and the United States. *See id.* The fact that there is no "alter ego" relationship between MBUSA and DaimlerChrysler does not prevent a finding of the requisite minimum contacts "as a result of its own independent role in the process that brought" the 1999 S400 Mercedes–Benz to this country. *See id.* All of these factors support a finding that DaimlerChrysler had "reasonable anticipation" that it might be haled into court in Florida.

 Finally, addressing the "purposeful availment" (second) step, again, several premises relied on by the *Vermeulen* court are instrumental in analyzing whether DaimlerChrysler purposefully availed itself of the privilege of conducting business in the United States. The German product was altered specifically to meet the requirements of the United States government's environmental regulations. There is no question that the product is advertised heavily in the United States, and even though the advertisement may not be controlled per se by DaimlerChrysler, the German company certainly intends that the product be advertised in the United States.

In this case, unlike *Vermeulen*, the Court does not have the benefit of any written agreements between DaimlerChrysler and MBUSA. DaimlerChrysler argues that MBUSA is not a sales agent

---

**7.** In this case, the first step has been satisfied because the accident involved a defective product titled in Florida, the accident occurred in Florida to a Florida seasonal resi-

dent, and MBUSA, a wholly-owned subsidiary of DaimlerChrysler, distributes the vehicles in the United States, including Florida.

marketing a product, because Daimler-Chrysler has no control over MBUSA. It certainly appears that MBUSA is the conduit by which DaimlerChrysler distributes its products to the United States. It also appears that DaimlerChrysler may have purposefully structured its agreement with MBUSA to disavow any contacts with MBUSA, claiming that the ownership of its products ceases to exist in Germany by the mere passage of title.[8]

DaimlerChrysler cannot insulate itself from Florida's jurisdiction by devising a scheme of distribution for the entire United States and at the same time ostensibly severing its ties with MBUSA. The purpose of MBUSA is to distribute the German product, one which is patently tailored to conform to the driving requirements of the roads and highways in the United States. In the current state, without the existence of MBUSA, DaimlerChrysler would not be able to distribute its product to the United States for sale. This connection between the two entities represents a marketing scheme evidencing more than simply placing a product into the stream of commerce.

Based on the arguments, materials and relevant law, the Court finds that Florida may exercise personal jurisdiction over DaimlerChrysler in this case. The Court emphasizes that the fact that MBUSA is a wholly-owned subsidiary of the parent corporation, DaimlerChrysler, does not in and of itself create personal jurisdiction over the parent. In this case, construing all reasonable inferences in favor of Plaintiff, it is apparent that MBUSA would not continue to exist as a distributor but for the products manufactured by its parent. The relationship between MBUSA and DaimlerChrysler encompasses the main, if not sole, means by which products manufac-tured in Germany are distributed to the United States for sale.

## Due Process: Traditional Notions of Fair Play and Substantial Justice

First, this case does not primarily involve indemnification rather than safety standards as did the case of *Asahi.*[9] Like the facts in *Vermeulen,* "[t]his case is different in kind from *Asahi.*" *See Vermeulen,* 975 F.2d at 761. Second, the plaintiffs are not foreign corporations seeking indemnification from another foreign corporation. The plaintiffs are Florida residents seeking damages for the injuries the husband suffered as a result of an alleged defect in his Mercedes–Benz. Third, there is minimal interest in having this dispute adjudicated abroad. Finally, even though witnesses and evidence regarding the car's design and manufacture may be located in Germany, the accident occurred in Florida where the witnesses and evidence regarding the accident are located.

Thus, the Court finds that not only does DaimlerChrysler's contacts with Florida satisfy the minimum contacts test but Florida's exercise of jurisdiction over the German stock corporation comports with traditional notions of fair play and substantial justice.

It is therefore **ORDERED AND ADJUDGED** that Defendant DaimlerChrysler, A.G.'s Motion to Dismiss Complaint for Lack of Personal Jurisdiction (Dkt.22) is **DENIED.**

---

8. "To rely upon the formal separation between a parent and subsidiary will not suffice for purposes of determining jurisdiction." *See Sound Move Autoplaza, Inc. v. Nissan Motor Co.,* No. CV–87–1938, 1989 WL 50797 (E.D.N.Y.1989).

9. *See also Huey v. American Truetzschler Corp.,* 47 F.Supp.2d 1342, 1349 (M.D.Ala. 1999).